Argued May 1, reversed and remanded June 14, petition for
rehearing denied July 18, 1967

NANEY, *Appellant, v.* LANE ET UX, *Respondents.*

428 P. 2d 722

*Sanford Kowitt,* Portland, argued the cause for appellant. With him on the brief were Peterson, Chaivoe & Londer, Portland.

*James F. Bodie,* Prineville, argued the cause for respondent. With him on the brief were Ralph J. Brown, and Bodie, Minturn & Glantz, Prineville.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, DENECKE, REDDING and FORT, Justices.

FORT, J. (Pro Tempore).

On March 19, 1964, George R. Naney, Jr., was present in a business building in Prineville, Oregon, owned by the defendants. He had called upon one of the tenants on the upper floor for business purposes. As he began his descent of the stairs he fell and sustained substantial injuries. This action is brought by his wife for loss of consortium arising out of that accident. Mrs. Naney claims that the fall and resulting injuries were caused by the negligence of the defendants in the design and installation of the stairs and the rubber matting placed thereon.

At the conclusion of the plaintiff's case, defendants moved for a nonsuit on the ground that "there was no evidence of negligence or proximate cause shown by the evidence sufficient to submit the cause to the Jury." The court allowed the motion. Plaintiff appeals from the resulting judgment.

The testimony, viewed most favorably to the plain-

tiff, established that the center portion of each stair tread was covered by rubberized matting. This matting extended across the tread to a distance of approximately eight inches from the skirtboard on each side of the stairway. The rubberized matting was affixed to each tread by a rigid aluminum strip across the toe or front of each tread. Screws were placed through each metal strip on through the rubber matting into the stair tread at appropriate intervals. There was evidence that the aluminum strip on the toe of the first step down extended approximately three-sixteenths of an inch beyond the edge of the rubberized matting. For this distance it was raised above the stair tread at a height of approximately one-eighth of an inch. This was a permanent condition.

There was testimony that this resulted in a sharp corner of metal near the front of the step three-sixteenths of an inch in its horizontal dimension and approximately one-eighth of an inch vertically, at a point approximately eight inches toward the middle of the stair from the right-hand skirtboard as the plaintiff descended. An architect, duly licensed to practice his profession in Oregon, testified that in his opinion such condition "could catch something, on the shoe of anyone going down the steps" and that in his opinion, therefore, this was not "a safe design."

Mr. Naney came from the office on the upper floor and approached the stairway from a direction opposite to the angle of its descent. As he reached the head of the stairway, he placed his hand on the newel post and turned around it so that he faced down the stairs. He then placed his right foot on the first step down. He next placed his left foot on the second step down, simultaneously transferring his right hand from the newel post to the handrail on his right. He then

started to move his right foot forward off of the first step, intending to place it on the third step down, shifting his weight to his left foot. As he brought his right foot forward and downward, something caught his heel. He fell heavily and sustained the injuries complained of.

The trial court, after correctly concluding that there was evidence that the metal strip extended beyond the width of the matting, held that there was no evidence to show that there was a causal relationship between the conditions shown and Mr. Naney's injuries.

■ We disagree. The jury could reasonably have found therefrom that Mr. Naney's right foot was on the first step down near the right-hand side of the stair in the immediate vicinity of the edge of the tread, and that this was the same side of the same step upon which the extended and raised metal protruding strip was located. It could further conclude that as he moved his right foot forward and downward toward the third step his shoe caught upon that protruding edge causing him to fall. It follows, then, that it was error to grant the motion for a judgment of involuntary nonsuit.

■ Since the matter must be retried, we think it appropriate to say that no error was committed here in permitting a licensed architect to testify concerning both the conditions he personally observed and his opinion regarding the safety of the design or installation.

■■ We have held that it was proper to permit an architect to testify under certain circumstances regarding the safety of certain structural designs or installations. *Ritter v. Beals et al,* 225 Or 504, 358 P2d 1080 (1961); *Eberle v. Benedictine Sisters,* 235 Or 496, 385

P2d 765 (1963). See also Morris, the Role of Expert Testimony in the Trial of Negligence Issues, 26 Texas L Rev (1947). In *Ritter v. Beals,* supra, we stated at page 525:

"The correct rule is that an expert's fitness to answer opinion questions must first satisfy the discretion of the trial judge. The expert then may express an opinion of an ultimate fact if the ultimate fact cannot be equally well decided by the jury from the same evidence upon which the expert has based his opinion. [Citations omitted.] The decision whether to receive the testimony should be left to the sound discretion of the trial judge. Following the preliminary screening by the trial judge, the jury ultimately passes upon the credibility of the witness, the soundness of his judgment, and the existence of the facts upon which his opinion was predicated * * *."

There was no abuse of discretion here. The mere fact that in a given situation expert opinion evidence regarding the safety of a design or condition may not be required to enable a jury to make a finding respecting it, as was true here, does not mean that it is error to permit an expert to give his opinion concerning it, if otherwise appropriate under the foregoing rule.

The judgment is reversed and remanded for a new trial.