Argued February 7, affirmed May 2, petition for
rehearing denied May 29, 1974

COONEY, *Appellant, v.* McGEE, *Respondent.*

521 P2d 1051

*Peter A. Schwabe, Jr.,* Portland, argued the cause
for appellant. With him on the briefs were Schwabe &
Schwabe, Portland.

*Walter J. Cosgrave,* Portland, argued the cause for

respondent. With him on the brief were Cosgrave & Kester, Portland.

HOWELL, J.

Plaintiff filed this action to recover damages for injuries sustained when she fell while descending a ramp in defendant's retail store. Plaintiff appeals from a judgment entered on a verdict for the defendant.

The sole question presented is whether the court erred in excluding expert testimony relating to whether the degree of the ramp's slope rendered it unsafe.

Plaintiff's complaint alleged, *inter alia,* that the plaintiff fell to the ground as a result of the defendant's negligence "in maintaining a ramp sloping sharply downward from the entrance level of the premises to a display room." The plaintiff called an engineer intending to have him testify concerning the degree of the slope of the ramp. During the plaintiff's offer of proof the expert described the slope of the ramp and testified as follows:

"Q * * * Based upon what you have seen there, and—well, first of all, let me—with regard to the drawing of the ramp, Mr. Talbott, what is the slope in that ramp?

"A It's one in 3.8.

"Q A little greater than one in four?

"A Yes, steeper than one in four.

"Q Mr. Talbott, what is considered to be a safe slope for a ramp used in business premises?

"A Well, one point ten—excuse me. One to ten is the normal slope for public useage, and you find it not only in buildings, but on slopes of side-

walks, where you join driveways, where there is a depression. That's the most common slope in use.

"Q And—

"A There's some conditions which would permit possibly using one in eight.

"Q Now, based upon that drawing, Plaintiff's Exhibit #1, and based also upon having looked at these premises, would you be in a position to express an opinion with regard to whether the ramp in issue was safe?

"A Yes.

"Q What is that opinion?

"A It was not."

The trial court considered the issue of the safety of the ramp to be "within the knowledge of a lay person" and therefore not a proper subject of expert testimony.

A similar case also involving expert testimony concerning the safety of the slope of a ramp was before this court in *Ritter v. Beals et al*, 225 Or 504, 358 P2d 1080 (1961). There, the trial court allowed an architect to testify that in his opinion the ramp was unsafe. On appeal, we held that "the jury could have found that the ramp was unsafe without the aid of the architect, but it was not error to give the jury the benefit of his learning," and the admissibility of his testimony was within the sound discretion of the trial judge. It is obvious that this court has disagreed on the issue of when expert testimony is admissible where that testimony falls between the situation where the jury is equally well qualified to find the truth and the situation where the jury is clearly not as qualified as the expert. In *Nancy v. Lane*, 247 Or 367, 428 P2d 722 (1967), plaintiff's husband fell when he caught his

heel on a metal strip on a stair tread. An architect testified that the metal strip was not "a safe design." On appeal, we held that the receipt of such evidence was a matter of discretion with the trial judge and that it was not error to permit an expert to express his opinion.

In *Koch v. Southern Pacific Co.*, 266 Or 335, 513 P2d 770 (1973), a majority of this court held that an expert witness could testify to those aspects of a railroad crossing which made it dangerous to vehicular traffic, but that he could not testify that it was extrahazardous. In *Yundt v. D & D Bowl, Inc.*, 259 Or 247, 486 P2d 553 (1971), this court, with three judges dissenting, upheld the exclusion of expert testimony concerning the permissible height of a metal strip, which was placed between the carpeting and the linoleum on the defendant's floor, as being within the discretion of the trial court. There, Justice BRYSON, writing for the majority, stated:

> "There are situations, * * *, where a jury clearly is not equally well qualified and needs help to find the truth. There are also situations where a jury clearly is equally qualified without help from opinion testimony such as offered here. It is the area between the clearly qualified and the clearly unqualified where the trial judge should be granted a certain latitude of decision in excluding or receiving expert opinion testimony." 259 Or at 259.

The three dissenting justices expressed their opinion as to why they felt the expert testimony was admissible. The majority and minority opinions in that case reflect the differences of opinion in this court and it is not necessary to repeat them here. In the instant case, as in *Ritter v. Beals*, supra, the admissibility of expert testimony as to whether the ramp

was unsafe because of the degree of its slope falls within that area where, as we said in *Yundt,* the trial judge should be granted a certain latitude of decision in excluding or receiving the testimony. We conclude that the trial court did not abuse its discretion in excluding the testimony.

Affirmed.

TONGUE, J., dissenting.

Although the complete transcript of testimony was not included, this case appears to involve facts similar to those involved in *Ritter v. Beals et al,* 225 Or 504, 358 P2d 1080 (1961), in which we held that the trial judge did not err in admitting similar expert opinion testimony. This incongruity is the result of our holding in *Ritter,* as reaffirmed in *Yundt v. D & D Bowl, Inc.,* 259 Or 247, 486 P2d 553 (1971), to the effect that in such a case the admission or exclusion of such evidence rests solely within the discretion of the trial judge.

I cannot subscribe to a rule under which recovery or denial of recovery of two seriously injured persons in cases involving such similar facts is so dependent upon an exercise of discretion by two trial judges. I believe that in both cases the expert opinion was admissible under the test previously approved by this court to the effect that such expert opinion testimony is admissible whenever it *could* have been of appreciable "help" or "aid" to the jury in understanding the facts and in arriving at a correct result. See *Ritter v. Beals et al, supra* at 525 ;[1] and *Yundt v. D & D*

---

[1] As stated by the majority, this court said in Ritter v. Beals et al, 225 Or 504, 524, 525, 358 P2d 1080 (1961), that:

"* * * The jury *could* have found that the ramp was unsafe without the *aid* of the architect * * *."

*Bowl, Inc., supra* at 258.[②] See also *Sandow v. Weyer-haeuser Co.,* 252 Or 377, 380, 449 P2d 426 (1969). Further reasons for this position are set forth in my dissenting opinion in *Yundt v. D. & D. Bowl, Inc., supra* at pages 260 to 275.

O'CONNELL, C. J., and HOLMAN, J., join in this dissent.

---

However, the basis for the decision was our finding that:
> "* * * the opinion was, however, relevant and helpful * * *"

and our holding that:
> "* * * The expert then may express an opinion on an ultimate fact if the ultimate fact cannot be *equally well decided* by the jury from the same evidence upon which the expert has based his opinion." (Emphasis added)

[②] In Yundt v. D & D Bowl, Inc., 259 Or 247, 258, 486 P2d 553 (1971), the majority quoted with approval from 7 Wigmore, Evidence (3d ed 1940) 21, § 1923, that:
> "* * * the only true criterion is: On *this subject* can a jury from *this person* receive appreciable help? * * *"