On petitioner on review's petition for rehearing filed September 29, former opinion filed September 9, 1981 (291 Or 527, 633 P2d 770), reversed and remanded for new trial January 26, 1982

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## RANFORD OWEN STRINGER,
*Petitioner on Review.*

(No. 79-6-323, CA 16904, SC 27482)

639 P2d 1264

Ronald D. Thom, Oregon City, for the petition.

No appearance contra.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson and Tanzer, Justices.

DENECKE, C. J.

Tongue, J., filed a dissenting opinion.

## DENECKE, C. J.

In our initial opinion in this case we held the trial court did not err in refusing to permit an expert called by the defendant to testify to his opinion where the victim was located when she was struck by the defendant. 291 Or 527, 633 P2d 770 (1981). We so held because a diagram relied upon by the expert in reaching his opinion was not in evidence and, therefore, was not considered by the jury. The defendant filed a petition for rehearing contending that the diagram was in evidence. The state filed no response to the petition.

■ In considering the petition, we re-examined the record. The transcript prepared by the court reporter indicates the diagram was not offered or received and the court reporter so stated in the list of exhibits prepared as part of the transcript. Remarks by counsel for both parties in the transcript indicate the diagram may have been delivered to the jury. The clerk's record states the diagram was received. In this ambiguous state of the record we conclude we should assume the diagram was available for examination by the jury. Therefore, we must consider the other contention of the parties on the issue of whether the trial court should have admitted the testimony of the expert on the location of the victim.

The state objected to the testimony and the Court of Appeals affirmed the trial court's refusal to receive the testimony on the basis of a line of cases of this court refusing to allow the admission of testimony of one who did not witness the accident as to the point of impact or other matters in issue. We cited those cases in our initial opinion in 291 Or at 531. We stated in our initial opinion:

> "In deciding these cases we did not state any specific principles governing the admission of opinion testimony by experts who had no personal knowledge of the accident. We conclude that the admissibility of such evidence, including accident reconstruction evidence, should be judged by the same rules that are used in deciding the admissibility of the opinion evidence of experts on other issues." 291 Or at 531.

The question arises whether our past decisions are consistent with the principle that the admissibility of accident reconstruction evidence should be judged by the same

rules that govern the admissibility of the opinion evidence of experts on other issues.

In *Thomas v. Dad's Root Beer, Etc.,* 225 Or 166, 168-169, 356 P2d 418, 357 P2d 418 (1960), we held inadmissible the testimony of a police officer, not a witness to the accident, on the point of impact of two vehicles. We based our decision on the ground "that a jury is as well able to draw its own inferences and reach its own conclusions from the facts presented as is a witness who was not present at the time of the accident." 225 Or at 168.

In *Thomas,* we cited in support of the above statement *Bailey v. Rhodes, Adm.,* 202 Or 511, 519-525, 276 P2d 713 (1954). In *Bailey,* a police officer testified to the physical scene of the accident, including the marks made by the vehicle indicating its course, the curve in the highway, a pole knocked down by the car, the position and condition of the car after the accident. On the basis of this evidence, he was allowed to testify that in his opinion the car was going 70-90 miles per hour. This court held that was error. We so held partly because such testimony was "pure speculation and conjecture" on the officer's part. We also so held because "opinion evidence is never admissible if all the pertinent facts can be sufficiently described and detailed to the jury so as to enable it to draw its own inferences and conclusions therefrom." 202 Or at 524-525. (The two bases for our decision may be contradictory; however, we need not pursue that possibility.)[1]

That quotation is not a completely accurate statement of Oregon law. The test is not whether a jury is capable of drawing its own inferences from the evidence presented. Rather, the test is whether the expert's testimony, if believed, will be of help or assistance to the jury.

"The factor which determines if a subject is a proper one for expert testimony is whether the answer of an expert can be of appreciable help to the jury. * * *." *Koch v. Southern Pacific Co.,* 266 Or 335, 341, 513 P2d 770 (1973).

---

[1] In neither *Thomas v. Dad's Root Beer, Etc., supra,* nor *Bailey v. Rhodes, Adm., supra,* 202 Or 511, was there any evidence that the police officer had any special education or training in a relevant scientific method. Apparently, the party calling him assumed he was qualified to express an opinion merely because he was a police officer who had investigated other accidents.

The statement of the rule as enacted by the legislature in the new Evidence Code, effective January 1, 1982, is that expert evidence is admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue * * *." Rule 702.

■    If a qualified expert offers to give testimony on the point of impact and such testimony is otherwise admissible and if believed would assist the jury in deciding the location of the point of impact, it should not be excluded.

In *Marshall v. Martinson,* 268 Or 46, 53-57, 518 P2d 1312 (1974), we again held the trial court did not err in refusing to receive testimony by an expert who did not witness the accident. The collision occurred when the defendant's automobile was overtaking and passing the plaintiff's vehicle. Plaintiff called an expert and posed a hypothetical question. The expert was asked to assume, among other facts, the plaintiff's vehicle was in the right-hand lane, traveling at 35 miles per hour, veered into the path of defendant's car which was traveling 70-75 miles per hour and moving straight ahead in the left lane within 12 to 18 inches of the center guard rail; and also to assume the right front corner of the defendant's car made contact with the left wheel well of plaintiff's vehicle and that after the impact defendant's car came to rest backward on the right-hand guard rail while plaintiff's vehicle went over the guard rail and broke a sign. Based upon these assumptions the expert was asked "whether the faster vehicle after the collision would make contact with the center guard rail on the left?" On the offer of proof the expert stated that the accident could not have been caused by the plaintiff veering into the defendant because that would have caused the defendant to go out of control and "rotate" and there was not "enough room" between the center lane line and the center guard rail for defendant to proceed without hitting the center guard rail.

We stated:
"* * * The reason is that under the facts of this case the trial judge could properly find that there were so many varying factors involved in the problem presented by this question that the opinion of an expert witness in answer to that question would indeed have been 'speculative,' as

observed by the trial judge in this case." (Footnote omitted.) 268 Or at 56.

From other parts of the opinion it appears that by use of the phrase "varying factors" we meant that there was no "reliable foundation in fact for expert opinion testimony." For example, there was no evidence of the angle at which the plaintiff's car allegedly "veered" into defendant's car or the kind of "rotation" the defendant's car would have made. A variation in these two elements could change the expert's opinion.

*Urbanski v. Johnson,* 283 Or 1169, 581 P2d 948 (1978), relied upon *Marshall v. Martinson, supra,* 268 Or 46. In *Urbanski,* we were of the opinion "that the evidence offered was without sufficient foundation and therefore too speculative."

In this case the admissible testimony of an expert on the issue of where the victim was when she was struck would be helpful to the jury. The jury did have the testimony of Jacqueline (the victim's companion) on that issue, but the defendant has a right to have any admissible testimony received to support his version of the facts. In the present case the expert's opinion purports to be based upon a sufficient foundation - the location of the victim's body, the location of the victim's shoes, the defendant's speed, etc. The state introduced evidence that in some instances differed from that relied upon by the expert; however, that does not result in "varying factors" as that phrase was used in *Martinson.* When the evidence upon which an expert bases his opinion is contradicted by the other evidence, the jury determines which evidence is to be accepted as correct and judges the credibility of the expert's testimony accordingly. On this general subject see Maguire and Epstein, *Preliminary Questions of Fact in Determining the Admissibility of Evidence,* 40 Harv L Rev 392 (1927); Morgan, *Functions of Judge and Jury in the Determination of Preliminary Questions of Fact,* 43 Harv L Rev, 165 (1929).

We asked the Oregon Association of Defense Counsel (OADC) as well as the Oregon Trial Lawyers Association to submit briefs on the issue. OADC suggested we restrict the receipt of accident reconstruction expert testimony to instances in which eye witness testimony is not

available. Illinois has such a rule. McGrath v. Rohde, 53 Ill2d 56, 61, 289 NE2d 619, 622-623 (1972)

■ In admitting testimony by a qualified aircraft accident reconstruction expert we stated that one reason why such testimony should be admitted is that frequently all witnesses to the accident are killed in an aircraft crash and, therefore, reconstruction expert testimony is particularly appropriate. *Myers v. Cessna Aircraft,* 275 Or 501, 510, 553 P2d 355 (1976). While this observation about the usual absence of eye witnesses is undoubtedly correct, we are of the opinion that to restrict the use of experts who did not witness the accident to instances in which no eye witnesses are available is a distinction which unnecessarily clutters the law of evidence. If such expert testimony has probative value it should be admitted.

■ The trial court does have "a certain latitude of discretion" in deciding whether to admit opinion testimony of a qualified expert. *Yundt v. D & D Bowl, Inc.,* 259 Or 247, 259, 486 P2d 553 (1971). See a full discussion of this problem in the majority and dissenting opinions in *Yundt v. D & D Bowl, Inc., supra,* 259 Or 247. As we earlier stated in this opinion, one of the criteria by which the admissibility of opinion evidence is determined is will such evidence "assist" or "help" the jury in performing its function. If the answer to that question is doubtful or reasonably could be decided either way, we hold the trial court has latitude in admitting the evidence and affirm whether the trial court admits the evidence or refuses to admit the evidence. *Cooney v. McGee,* 268 Or 521, 521 P2d 1051 (1974).

■ In this case, however, the answer is not doubtful. The location of the victim when she was struck was a key issue. As we earlier stated, the defendant was entitled to have his evidence of where she was located presented, if otherwise admissible, to rebut the testimony of Jacqueline offered by the state. By reason of his expertise, based upon the evidence, the witness purported to be able to form and express an opinion on the location of the victim at the time of impact. Ordinarily, a jury would not have the expertise which would give the jurors the capacity to make the calculations upon which the expert's opinion rested. For this reason the proffered testimony would have assisted or helped the jury and should have been admitted.

The cause is reversed and remanded to the trial court for a new trial.

**TONGUE, J.,** dissenting.

This is the first case in which this court has squarely faced the important question whether "accident reconstruction" by opinion testimony of expert witnesses should be admissible in Oregon and, if so, the conditions under which such testimony should be admitted. In recognition of the importance of this case, both the Oregon Trial Lawyers Association (OTLA) and the Oregon Association of Defense Counsel (OADC) were requested by this court to submit briefs as amicus curiae.

I do not disagree with the holding by the majority that the exclusion of such opinion testimony is not necessarily required whenever there are eye witnesses to an automobile accident or because the expert witness was not present at that time.[1] Neither do I disagree with the holding, as a general proposition, that "accident reconstruction" by opinion testimony "should be judged by the same rules that govern the admissibility of opinion evidence of experts on other issues." In my view, however, it is important to restate these rules for application in such cases.

My principal disagreements with the majority are: (1) its statement of rules for the admission of opinion testimony by expert witnesses which are contrary to previous decisions by this court and which change the law of Oregon on this subject, and (2) the misapplication of these rules to "accident reconstruction" cases, including this case, by first stating that the trial court has some discretion in deciding whether to admit expert opinion testimony and by then holding, in effect, that the facts of this case were such that to exclude the opinion testimony by the expert witness was such an abuse of discretion by the trial judge as to require a reversal of his ruling excluding such testimony and a remand of this case for a new trial.

---

[1] Both the Oregon Trial Lawyers Association (OTLA) and the Oregon Association of Defense Counsel (OADC), by briefs submitted as amicus curiae at the request of this court, agree, however, that the "availability of eyewitness testimony" is a "factor" which the trial judge may properly consider in ruling on the admissibility of expert opinion testimony in such cases.

1. *The rules governing the admission of expert opinion testimony.*

(a) *The general rule.*

The majority states (at 391) that the general rule to be applied is "whether the experts' testimony, if believed, will be of help or assistance to the jury." The more correct statement of this general rule, however, is as stated in 7 Wigmore, Evidence § 1923, at 29 (Chadbourn rev. 1978) as follows:

> "* * * the only true criterion is: *On this subject can* a jury receive from *this person appreciable* help? In other words, the test is a relative one, *depending on the particular subject* and the particular witness with reference to that subject, and is not fixed or limited to any class of persons acting professionally." (Emphasis added)

This court has approved this statement of the rule. *See Simpson v. Sisters of Charity of Providence,* 284 Or 547, 568-69, 588 P2d 4 (1978), and *Yundt v. D & D Bowl, Inc.,* 259 Or 247, 258, 486 P2d 553 (1971). Rule 702 of the new Oregon Evidence Code (effective January 1, 1982), that expert evidence is admissible if it "* * * *will* assist the trier of fact to understand the evidence or to determine a fact in issue * * *" is consistent with the rule as stated by Wigmore, as previously approved by this court. Rule 702 was not intended to change that rule.[2]

(b) *Discretion.*

The majority states, somewhat grudgingly (at 394), that trial courts have "a certain latitude of discretion" in deciding whether to admit expert opinion testimony, but concedes that "if the answer to that question [whether such testimony will help the jury] is doubtful or reasonably could be decided either way," the trial court has discretion to either admit or exclude such evidence. As previously noted, however (and as discussed below with reference to the facts of this case), the majority then holds that "[i]n this case, however, the answer is not doubtful" and that the trial judge abused his discretion in excluding the expert opinion testimony in this case.

---

[2] *See* Legislative Commentary to the Oregon Evidence Code, Rule 702 (1981).

According to 3 Louisell and Mueller, Federal Evidence § 382, at 644-45 (1979):

"* * * trial judges are given *broad discretion* to decide whether testimony by a qualified expert should or should not be received. There are only occasional reversals for error in administering the helpfulness criterion." (Emphasis added)[3]

The rule of "broad discretion" is also stated by McCormick, Evidence § 13, at 30, n. 67 (2d ed 1972). As stated by the appellate court in the application of this rule in *United States v. Lopez,* 543 F2d 1156, 1158 (5th Cir 1976), *reh den* (1977), *cert den* 429 US 1111, 97 S Ct 1150, 51 LEd 2d 566 (1977):

"[G]reat deference is given to the discretionary ruling of the court in such cases. * * * [T]he trial judge is uniquely suited to make such determinations and we are loath to overturn his considered judgment as to the admissibility of expert testimony."

Again, it is important to bear in mind that in the exercise of this "broad discretion" to admit or exclude opinion testimony, the function of the trial judge is not confined to a determination whether *some* opinion by *some* expert *may* be of *some* help to a jury, but extends to a determination of the question whether the opinion testimony offered by *"this person" "will"* be of *"appreciable help"* on *"this subject."*

In accordance with this rule of "broad discretion," this court has always previously affirmed the exclusion of expert opinion testimony by trial courts and has never previously reversed a trial court for excluding such evidence in accident cases. *See, e.g., Urbanski v. Johnson,* 283 Or 169, 581 P2d 948 (1978), *Cooney v. McGee,* 268 Or 521, 521 P2d 1051 (1974); *Marshall v. Martinson,* 268 Or 46, 518 P2d 1312 (1974); *Carter v. Moberly,* 263 Or 193, 501 P2d 1276 (1972); and *Yundt v. D & D Bowl, Inc., supra.*

(c) *Probative value v. danger of confusion or prejudice.*

---

[3] On this point it is also significant that both the Oregon Trial Lawyers Association and the Oregon Association of Defense Counsel, by briefs submitted as amicus curiae, agreed that the trial judge should have "broad discretion" whether to admit or exclude opinion testimony by expert witnesses.

As stated by McCormick, Evidence § 170, at 363-64 (1954), and quoted with approval by this court in *State v. Krause,* 251 Or 318, 321, 445 P2d 500 (1968):

"Any relevant conclusions which are supported by a qualified expert witness should be received unless there are other reasons for exclusion."

This is an application of the familiar rule that even evidence of probative value may be excluded if its probative value is outweighed by such considerations as danger of prejudice or confusion of the jury, particularly when the probative value of the offered testimony is slight and the danger of prejudice or confusion of the jury is great. Thus, in *State v. Krause, supra,* at 321, this court, in referring to opinion testimony by expert witnesses, quoted with approval the statement by McCormick, Evidence § 170, at 363-64 (1954) that:

"* * * its probative value may be overborne by the familiar dangers of prejudicing or misleading the jury. * * *"

It follows that this is also a factor to be considered by the trial court in the exercise of its discretion in deciding whether to admit or exclude opinion testimony by expert witnesses. *See* Note, *Expert Testimony in Illinois,* 10 Loy. Chi. L.J. 503, 516 (1979).

This is consistent with the recognition by this court that opinion testimony by expert witnesses should not only be "weighed with caution" by the trier of the facts, but should also be "received with caution." *See State v. Clark,* 286 Or 33, 593 P2d 123 (1979). *See also W.R. Chamberlin & Co. v. Northwestern Agencies, Inc.,* 289 Or 201, 611 P2d 652 (1980), in which this court stated (at 207) that:

"This court has stated that the testimony of expert witnesses is to be *received* and weighed with caution." (Citing cases) (Emphasis added)

and went on to quote with approval from 1 Taylor, Evidence § 58 (8th ed 1885), which was, in turn, quoted with approval in *Baber v. Caples,* 71 Or 212, 221, 138 P 472 (1914) as follows:

"Perhaps the testimony which least deserves credit with a jury is that of skilled witnesses. These gentlemen are usually required to speak, not to facts, but to opinions; and, when this is the case, it is often quite surprising to see

with what facility and to what an extent their views can be made to correspond with the wishes or the interests of the parties who call them. They do not, indeed, willfully misrepresent what they think; but their judgments become so warped by regarding the subject in one point of view that, even when conscientiously disposed, they are incapable of expressing a candid opinion."

Louisell and Mueller, *supra,* at 643, also refers to the dangers of undue prejudice resulting from the admission of opinion testimony by an expert witness because of its "aura of special reliability and trustworthiness," as stated in *United States v. Amaral,* 488 F2d 1148, 1152 (9th Cir 1973), in affirming the exclusion by the trial court of opinion testimony by an expert witness.

(d)   *The foundation required.*

This court held in *Ritter v. Beals et al,* 225 Or 504, 525, 358 P2d 1080 (1961), in affirming the exercise of discretion by the trial judge in admitting opinion testimony by an expert witness under the facts of that case, that the decision by a trial judge to admit or exclude such testimony is to be made "following the preliminary screening by the trial judge."

As stated in McCormick, Evidence § 13, at 31 (2d ed 1972):

"Nor will expert opinion be admitted *if the court believes* that an opinion based upon the facts in evidence cannot be *reasonably* grounded upon those facts." (Emphasis added)

As also stated in 2 Jones, Evidence § 14:19, at 633-34 (6th ed 1972):

"Expert opinion, to be received in evidence, must be reasonable and not nebulous or speculative. The opinion is no stronger than the facts which support it and the explanation of its basis."

*See also* Voorhis, *Expert Opinion Evidence,* 13 New York L.F. 651, 657-58 (1967), citing cases holding that it is the function of the trial court to examine the foundation for expert opinion testimony and to exclude such testimony where the foundation is so insufficient as to render the opinion of the expert so speculative as to have no probative value. To the same effect, as stated by the Court of Appeals

for the Fourth Circuit in *Kale v. Douthitt,* 274 F2d 476, 482 (4th Cir 1960):

"The facts upon which the expert bases his opinion or conclusion *must permit reasonably accurate conclusions as distinguished from mere guess or conjecture.*" (Emphasis added)

More specifically, as stated in 3 Louisell and Mueller, *supra,* at 642:

"Sometimes expert testimony, even from an amply qualified person, is unlikely to be *helpful* to the trier of fact. For example, *where the greatest difficulty faced by the trier is the scarceness of data or the unavoidable presence of imponderables, expertise may not be useful at all* in overcoming the obstacles, and the helpfulness requirement points toward rejection of the testimony." (Emphasis added)

To the same effect, in previous cases this court has considered the quality of the facts and assumptions upon which offered opinion testimony was based to be a significant factor in determining whether the trial court erred in excluding or admitting the opinion testimony. *See, e.g., Urbanski v. Johnson, supra,* 283 Or at 172; *Galego v. Knudsen,* 281 Or 43, 47-48, 573 P2d 313, *modified* 282 Or 155, 578 P2d 769 (1978); and *State Highway Comm. v. Compton,* 265 Or 339, 344-45, 507 P2d 13 (1973). *See also Tuite v. Union Pacific Stages et al,* 204 Or 565, 583-84, 284 P2d 333 (1955).

It is clear, as recognized by the majority, that if facts necessary to support the opinion of an expert witness are not in evidence, such an opinion must be rejected for lack of a proper foundation. The requirement of a proper foundation for opinion testimony by an expert witness is not so limited, however. Thus, it follows from these authorities and cases that even though an opinion by an expert witness is stated by him to be based upon facts which are in evidence, a trial judge, in the exercise of his "broad discretion" in such cases, may nevertheless, upon his "preliminary screening" of an offer of such opinion testimony and in the exercise of the "broad discretion" conferred upon him in such matters, exclude such testimony upon the ground that such an opinion "cannot be reasonably grounded on such facts," or that an opinion

based on such facts would be either "speculative" or without sufficient probative value to be of "appreciable help" to the jury on "this subject."

2. *The application of such rules to "accident reconstruction" testimony.*

(a) *In general.*

These same rules are applicable in the exercise by the trial judge of the "broad discretion" conferred upon him as a matter of "preliminary screening" in deciding whether opinion testimony by "this person" (i.e., "this expert witness") will be of "appreciable help" on the "particular subject" of "accident reconstruction."

Again, as stated in Note: *Opinion and Demonstrative Evidence: Automobile Accident Reconstruction,* 14 Washburn L.J. 264, 269 (1975):

"* * * the trial judge occupies a better position than the appellate court to evaluate the witness' competency and the probability the testimony will aid the jury. The court's ruling on expert opinion admissibility will be set aside only for an abuse of discretion."

As also stated by that same authority (at 271) in discussing opinion testimony by an expert witness in "accident reconstruction":

"An expert's opinion is *inadmissible unless it has a proper factual foundation.* The opinion must be shown to have a *substantial and competent basis in fact* in order to assure it is *not mere speculation* or conjecture. An expert's 'testimony bearing on the issues at hand *must be based on facts which are sufficiently accurate, comprehensive, and pertinent to give his opinion probative value.'*" (Emphasis added)

*See also* Annot., 66 ALR 2d 1048, 1053 and 1062 (1959).

To the same effect, as stated by Baker, *Limitations on Accident Reconstruction,* 8 Defense L.J. 3, 6 (1960):

"With insufficient or unreliable information nobody, however astute, can produce more than vague speculation about the events of the accident."

*See also* Schoone and Schapiro, *Reconstruction of Automobile Accidents Through Lay and Scientific Testimony,* 47 Marquette L. Rev. 491, 502-03 (1964).

As also stated in Note: *Accident Reconstruction by Expert Testimony,* 10 S. Dak. L. Rev. 161, 167 (1965):

"The quantum and quality of the facts in the record [as a foundation for the expert opinion] will be determined by the trial court."[4]

In *Marshall v. Martinson, supra,* 268 Or at 56, this court, in accordance with these authorities, affirmed the exclusion by a trial judge of opinion testimony by an expert in "accident reconstruction" for the reason that:

"Under the facts of this case the trial judge could properly find that there were so many varying factors involved in the problem presented by this question that the opinion of an expert witness in answer to that question would indeed have been 'speculative,' as observed by the trial judge in this case."

The court also added a footnote on pages 56 and 57 citing *Kale v. Douthitt,* 274 F2d 476, 483 (4th Cir 1960) in which an expert opinion had also been excluded upon the ground that there were "too many varying factors."

The majority would distinguish *Marshall v. Martinson* on the ground that:

"From other parts of the opinion it appears that by use of the phrase 'varying factors' we meant that there was no *'reliable foundation* in fact for expert opinion testimony.' For example, there was no evidence of the angle at which the plaintiff's car allegedly 'veered' into defendant's car or the kind of 'rotation' the defendant's car would have made. *A variation in these two elements would change the expert's opinion.*" (292 Or at 393)

It would appear, however, that the principal basis for the decision by this court in that case was *not* that there

---

[4] Also of significance upon the question whether a trial court, in the exercise of its "broad discretion," may exclude the opinion testimony of an expert witness in such a case despite the fact that it may have some probative value is the fact that both the Oregon Trial Lawyers Association and the Oregon Association of Defense Counsel take the position in the amicus curiae briefs submitted by them that although the presence of eye witnesses does not of itself require the exclusion of expert opinion testimony, it is a "factor" to be considered in the decision whether to admit such testimony. In other words, if there are ten church bishops present at the scene of an accident, the trial court may, in its discretion, exclude opinion testimony by an expert witness who was not present at that time, particularly when, as in this case, there is a serious question whether there was a "reliable foundation" for such an opinion.

was *no* evidence on some elements relied upon by the expert witness as a foundation for his testimony, but that there were too many "varying factors" to provide a "reliable foundation" for the expert opinion testimony. In any event, as recognized by the majority, there must be a "reliable foundation in fact for expert opinion testimony." It would also follow that in the absence of a "reliable foundation," the opinion of an expert witness would be "speculative" and of insufficient probative value to be of "appreciable help" to the jury.

(b)  *The "point of impact" in automobile accident cases.*

Many cases and authorities discuss the admissibility of opinion testimony by experts in "accident reconstruction" in attempts to establish the speed of one of the vehicles involved in an accident. *See, e.g.,* Schoone and Schapiro, *supra,* at 492; Baker, *supra;* Phillips and Jacobs, *Scientific Reconstruction of an Automobile Accident,* 25 Ins. Counsel J. 438, 440 (1958); Annot., 29 ALR 3d 248 (1970), and Annot., 93 ALR 2d 287 (1964). The principal issue in this case, however, was not the speed of the defendant's vehicle, but whether he was on the right or wrong side of the road when his vehicle struck and killed the decedent, i.e., the "point of impact."

Again, as stated in Annot., 66 ALR 2d 1048, 1053 (1959):

"The question of the admissibility of skilled or expert opinion evidence as to the point of impact or collision in a motor vehicle accident case rests largely within the discretion of the trial court, so that its ruling thereon will not be overturned upon appeal unless such discretion has been abused."

and, at 1062:

"Where it is proposed that a skilled or expert witness give opinion testimony based upon his own knowledge or observations at the accident scene, it must be shown that the witness has sufficient knowledge of facts to enable him to form an opinion entitled to be given weight by the jury."

In many cases involving as an issue the point of impact in a collision between two vehicles, the opinion testimony by the expert witness is based upon physical facts such as the location of debris on the road, the location

and length of skid marks on the road, the position of the motor vehicles after the collision and the nature of the damage to each of the vehicles. *See, e.g.,* Phillips and Jacobs, *supra,* at 442-43. An additional fact considered to be of importance in such cases, at least under some circumstances, in order to provide a proper basis for opinion testimony of an expert witness as to the point of impact, is the weight of the vehicles involved, although in some circumstances the weight of the vehicles may not be of great importance. *See also* Baker, *supra,* at 23 and 30-34.

In cases involving collisions between motor vehicles and pedestrians, bicycles or motorcycles hit, "thrown" or "tossed" by the motor vehicle for any considerable distance in which the point of impact is in issue, it is obvious that the weight of the motor vehicle is a factor of importance in order to provide a reliable basis for the opinion testimony by an expert witness on that issue. Additional factors of importance in providing a reliable foundation for an opinion upon the point of impact in such cases include, among other things, not only the speed of the motor vehicle and the horizontal angle at which the pedestrian, bicycle, motorcycle or its riders were "thrown" or "tossed" by the motor vehicle, but also the vertical angle and height of that trajectory. *See* Baker, *supra,* at 20 and 23. To analogize, the same swing (speed) of the same bat (weight) at the same horizontal "level" against the same ball may result either in a "pop fly" or in a "line drive," in which event the ball would travel further than the "pop fly."

Courts in other jurisdictions have held that the admission of such testimony is prejudicial error, or that exclusion is not error, when the opinion of the expert is based upon assumptions critical to calculations used in determining "point of impact," but which are not shown to be connected to the conditions existing at the time and place of the collision, or where data necessary for the accurate calculation of "point of impact" are unknown or not considered.

Thus, in *Beardall v. Murray,* 27 Utah 2d 340, 341, 496 P2d 260 (1972), the court held that it was not error for the trial court to exclude an expert's opinion as to point of impact, reasoning that the expert had reached his conclusion using:

"* * * a formula relating to the physics of a hypothetical case, based on weights, speeds of vehicles, angles of travel, etc. which were not shown to be connected with those extant here."

Similarly, in *Solis v. Southern California Rapid Transit District,* 105 Cal App 3d 382, 164 Cal Rptr 343 (1980), involving a pedestrian injured when struck by a bus, the trial court, over the objections of plaintiff, permitted an accident reconstruction expert to testify on behalf of defendant that in his opinion plaintiff was west of the crosswalk when struck by the bus. On appeal, plaintiff assigned as error the admission of the expert's opinion, and the court agreed, holding (164 Cal Rptr at 344) that there was "no adequate foundation" for the expert's opinion on the "point of impact." The court considered the following points, among others, to be significant in reaching its decision: (1) that the reconstructionist did not know the coefficient of friction of the street at the time of the accident, which is necessary to determine stopping distance; (2) that he did not know the condition of the bus tires at the time of the accident; (3) that there was no physical evidence how far the bus may have moved after impact or in what direction plaintiff "spun off"; and (4) that the expert's assumption as to the speed of the bus, which was crucial to the conclusion that the point of impact was outside the crosswalk, was based on an experiment which lacked adequate foundation and was not conducted under conditions substantially similar to those on the date of the accident. Such factors are important because, as the court explained (164 Cal Rptr at 347-48):

"Starting with photographs of the bus and plaintiff's body in what was assumed to be the positions they came to rest after the collision, the expert witness attempted to reconstruct the accident. *Many decisions have excluded such expert testimony attempting to work backward from the point of rest, where under the circumstances of the case too many variables were involved, so as to make the opinion based primarily upon conjecture and speculation.*
"* * * * *

"Crucial to the expert's conclusion were the assumed points of rest of the bus and of plaintiff's body. But after the actual impact the place the bus came to rest was still within the control of the driver to some extent, and the

place plaintiff's body came to rest was also to some extent controlled by her, there being evidence that she took a few steps backward before falling. *Several courts have indicated that no admissible expert opinion could be reached as to the course of vehicles or bodies after impact, where such course is still under varying elements of human control."* (Citations omitted) (Emphasis added)

To the same effect, in *Parker v. Hohman,* 250 A2d 698 (Me 1969), the court held that although generally it is proper to admit a qualified expert's opinion as to point of impact so long as the opinion results from that application of scientific principles and physical laws to "adequate facts" which are in evidence, it was prejudicial error in that case to permit an expert to testify as to the position of defendant's automobile just prior to impact. The procedure of the expert was to begin with the rest positions of the two cars and, working backwards, determine their points of disengagement, of total engagement and of initial contact. These determinations required a series of deductions in which the calculation of "kinetic energy" and the "combined mass" of the two cars played necessary parts. The court concluded that the calculations were based on assumptions which rendered the ultimate determination "unreliable and objectionable," pointing out the eight-degree uncertainty of angle at impact, the lack of testimony as to each car's speed (essential to determining "kinetic energy"), uncertainty as to degree of friction between tires and road surface after initial impact, and the uncertainty as to the loaded weight of the cars (which is important in determining the "center of balance" and, therefore, the area and course of rotation of the cars after impact).

The decisions by this court in automobile accident cases involving an issue of "point of impact" are consistent with these cases and also with the authorities previously cited. Thus, in *Urbanski v. Johnson, supra,* this court also affirmed the rejection by the trial court of an offer of opinion testimony by an expert witness based upon photographs showing skid marks, a police report, and other facts, holding (at 172) that "[w]e agree with defendant that the evidence offered *was without sufficient foundation and therefore too speculative."*

3. *Application of rules to facts of this case.*

(a) *Facts considered by expert witness as the basis for his opinion.*

In this case the defendant was indicted for manslaughter in the second degree. The state offered evidence that defendant, after several drinks, hit the deceased with his pickup truck as she was walking along the left edge of the road. On appeal, defendant contended that the trial court erred in excluding opinion testimony of an expert witness to the effect that the "point of impact" was "about nine inches" to the right of the center line of the road. Before expressing that opinion, defendant's witness, Mr. Talbott, testified that he considered not only:

(1) The location of decedent's body, as shown on the diagram prepared by a police officer who did not see the body at that location, but relied upon what he was told by other persons, and

(2) The location of decedent's shoes, as shown by the same diagram;

but that he also made additional measurements and observations relating to other facts, which he presumably also considered as facts which were necessary in arriving at an opinion as to the point of impact and which included the following:

(3) The width of the right-hand lane of the road.

(4) The "vertical curve" of the road "from right to left."

(5) The "crown" of the road in that area, i.e., the slope from the center line to the edge of the road, with a difference of about 6 inches from right to left and about 5 inches from left to right - more than twice the customary "crown."

(6) The "castor," "camber" and "toe-in" of the steering mechanism and front wheels of American motor vehicles and their reaction to the "crown" of a roadway.[5]

---

[5] Mr. Talbott testified that the "castor mechanism" is "the point about which the front wheels are hinged * * * a little further forward than the actual center line of the wheel," so that "when you take your hands off the wheel," it tends to "make the steering wheel spin back to straight ahead position."

He also testified that:

"The castor, camber and toe-in all work together, and the toe-in and the camber are set to compensate for a little crown. As I said earlier, something on the order of maybe a quarter of an inch per foot side slope. When the slope gets more than that, then the tendency of the camber, castor and toe-in is to

(7)　The measurements of defendant's vehicle (but not its weight).

(8)　The speed of the vehicle as "between 40 and 45 miles per hour."

(9)　The physical damage to that vehicle, as shown by photographs, and which included damage to the left front headlight, an "indentation on the top of the hood at the left side near its rear" and damage to the left rear-view mirror.

(10)　Glass fragments, presumably from the rear-view mirror, found in decedent's clothing, "on the window frame alongside the driver's window" and on both the traveled portion of the road and "alongside the road."

(11)　The nature of decedent's injuries, which included a fractured upper right arm and elbow and a fracture of the right side of her pelvis.

(12)　The fact that the roadway was two feet, four inches higher than the location where the body was found.

(13)　The fact that decedent and her companion were walking down the road and that her companion "felt something hard hit her right upper arm."

"Using this information," the witness testified that he first determined (1) the "path" decedent's body followed after it was struck and then, after considering the center of gravity of decedent's body with respect to the height of the "components of the vehicle" that struck her, he projected (2) the reasonable *range* of angles at which the body would have been propelled horizontally, which he computed to be an angle of 46.976 degrees. Then, "knowing the companion

---

cause the vehicle to drift downhill. In other words, away from the crown, either toward the right or left, and therefore, when we get into a road situation *where the castor, camber and toe-in, the wheel alignment isn't the ideal,* then you must steer the vehicle in order to have it track straight and that's characteristic of all vehicles of American manufacture." (Emphasis added)

"* * * * *

"* * * as you ride nearer the center of the road and perhaps straddle it, then the tendency of the vehicle to drift to the right is compensated and it will track straight."

Mr. Talbott did not, however, examine defendant's Ford pickup truck to determine whether its castor, camber, toe-in and wheel alignment were "ideal" or not.

\* \* \* was struck on the right arm," which "gives a clue as to the height of the trajectory," he projected (3) "the trajectory of the body." He then (4) "work(ed) backwards to find out where the vehicle had to be on the roadway in order to cause that flight path of the body."

Defendant made an offer of proof to the effect that, based upon these facts and these projections, the point of impact where defendant's pickup truck struck decedent was "about nine inches to the right of the center line of the road." He did not, however, attempt to locate that point of impact with reference to its distance from decedent's body or otherwise with reference to its distance from any other physical point of reference.

(b) *The inadequacy of this "foundation."*

In considering whether the facts relied upon by Mr. Talbott were sufficient to provide a foundation which would be "reliable," as necessary in order for the trial judge, in making the required "preliminary screening" of this opinion testimony offered by the defendant, to make the required finding that such testimony by "this person" will be of "appreciable help" on the "particular subject" of the point of impact between defendant's truck and decedent's body, the following facts are significant:

(1) There was no competent evidence of *the location of the body,* the most important fact necessary to provide a sufficient foundation for the opinion by Mr. Talbott. He testified that he relied upon the location of the body as shown by a diagram prepared by a deputy sheriff, who did not arrive at the scene of the accident until after the body had been taken to a hospital, but relied upon what he was told by other unnamed persons in showing the location of the body by an "X" on that diagram. Thus, the location of the body relied upon by Mr. Talbott was based upon evidence that was not only hearsay, but was from unidentified sources.[6] The exact location of the body is of crucial importance in this case because this expert witness professed to be able to fix the "point of impact" within a

---

[6] It is of interest to note that although the list of exhibits shows that this diagram (Defendant's Ex. K) was "offered and received," that exhibit is not marked as "Received," as are other exhibits, and there is nothing in the transcript of the proceedings to show that this exhibit was either offered or received in evidence, much less that it was received without or over objection by the state.

matter of inches ("about nine inches" to the right of the center line). Thus, a variation of more than nine inches could place the point of impact on the left of the center line, so as to have defendant driving his truck over the center line when it hit the deceased.

(2) As the basis for his opinion, Mr. Talbott assumed that *the speed of the truck* was *between 40 and 45 miles per hour,* as testified by defendant. Thus, there was a possible variable of over 10% in the assumed speed of the truck. The speed of the motor vehicle is also a vital and crucial factor in making a reliable determination of the point of impact in cases involving pedestrians hit and "thrown" by motor vehicles. This is particularly true in this case because (a) Mr. Talbott undertook to make such a precise determination of the point of impact in this case ("approximately nine inches" to the right of the center line); (b) if the point of impact had been more than nine inches to the left, defendant would have been at fault for hitting decedent while driving his truck "over" the center line, and (c) Mr. Talbott admitted that the lower the speed of the truck, the further to the left the point of impact would be.

It follows that a variation of 10% in the speed of defendant's truck would make impossible a reliable opinion that the point of impact was "about nine inches" to the right of the center line of the road. As stated in *Solis v. Southern California Rapid Transit District, supra,* at 164 Cal Rptr 347, in holding expert opinion "point of impact" testimony to be inadmissible under the facts of that case, "[S]uch small differences in speed [between 6 and 7 miles per hour in that case] made big differences in the conclusion sought to be reached [i.e., the point of impact]."

(3) Although Mr. Talbott measured the dimensions of defendant's truck, he did not determine *the weight of the truck,* which would depend not solely on its length and width, but whether it was loaded and the weight of any such load. As previously noted, in a case involving a collision between a motor vehicle and a pedestrian hit and "thrown" by it, the weight of the motor vehicle is an important and sometimes necessary factor, together with the distance that the pedestrian was "thrown" and the vertical angle of that "trajectory," in determining the "point of impact."

(4) Although Mr. Talbott testified that he was able to determine the horizontal angle at which decedent's body was "thrown" after being hit by the truck (which he determined to be 46.976 degrees), he did not purport to

have been able to *determine the vertical angle of the trajectory of decedent's body,* an equally important factor in determining the "point of impact," for reasons previously stated. Instead, he testified only that the fact that decedent's companion was hit on her right arm by decedent's body after it was hit by the truck gave a "clue" as to the height of the trajectory.

In order to provide a *reliable* "clue" for that purpose, however, it would be necessary to know the distance between decedent and the companion when her arm was hit by decedent's body. Mr. Talbott did not know that fact, but assumed that the companion was "from five and a half feet to approximately ten and a half feet" in front of decedent when the decedent was hit by the truck. The only direct evidence on this point was the testimony of the companion that the decedent was "beside her" when hit by the truck. Thus, there was no reliable evidence from which Mr. Talbott could determine the vertical angle of the trajectory of decedent's body, and he apparently did not undertake to do so.

Even the majority, in its attempt to distinguish the decision by this court in *Marshall v. Martinson,* refers to the need for a "reliable foundation *in fact* for expert testimony" and notes that in that case there was "no evidence" of the *angle* at which plaintiff's car allegedly "veered" into defendant's car and that a "variation" of that "element" would "change the expert's opinion." Similarly, in this case there was no evidence of the vertical angle of the trajectory of the body of the deceased.

(5) *The nature of the impact* between the truck and decedent's body, although perhaps not controlling in itself, was also such as to cast further doubt upon the reliability of the foundation for the opinion by Mr. Talbott. Thus, in addition to damage in the area of the left front headlight of the truck, there was a dent in the left side of the back of the hood and damage to the left rear-view mirror. This would indicate that decedent's body, after being hit by the left front corner of the truck, was not immediately "thrown" either forward or at any particular vertical or horizontal angle, but that her body first went up over the hood of the truck, hitting both the back of the hood and the left rear-view mirror. Thus, the "vertical angle" may well have been that of a "pop fly," rather than that of a "line drive." Again, because Mr. Talbott's opinion as to the point of impact was so precise and because a variation of as few as twelve inches in the location of the point of impact

in this case was so important, these facts raise substantial doubts as to the reliability of the foundation for that opinion.

(6) The failure by Mr. Talbott to examine the "camber," "castor" and steering mechanism of defendant's truck raises further doubt upon the reliability of the foundation for his opinion in view of his testimony relating to the "crown" of the roadway and its effect upon the steering of a motor vehicle, depending upon whether its "castor," "camber" and wheel alignment are "ideal" or not.[7]

*Conclusion - Effect of Majority Opinion.*

As previously stated, the majority holds that under the facts and testimony in this case, it was not within the discretion of the trial judge to exclude the opinion testimony by Mr. Talbott that the "point of impact" between defendant's truck and the body of the decedent was "approximately nine inches" to the right of the center line of the road and that it was error as a matter of law to exclude that opinion testimony.

With all due respect to the majority, I am of the opinion that because the location of the body of the deceased was not established by any competent evidence; because of an admitted variation of over 10% in the assumed speed of defendant's truck, and because of the failure of Mr. Talbott to determine the weight of the truck, aside from his apparent inability or failure to compute the vertical angle of the trajectory of decedent's body, it follows that the foundation for the opinion by Mr. Talbott was so fatally deficient as to have made it error for the trial judge to admit that opinion in evidence.

In any event, under the facts of this case and considering (1) the weakness, if not total inadequacy, of the foundation as a "reliable foundation" for that opinion with respect to the location of the body, the speed of the truck, the weight of the truck, the vertical angle of the trajectory of decedent's body, and the facts relating to the nature of the impact between her body and the truck, together with (2) the large number of variable factors considered by Mr. Talbott as the basis for his opinion (as in *Marshall v. Martinson);* (3) the possible prejudicial effect upon a jury of

[7] *See* note 5, *supra.*

opinion testimony by a purported "expert" in "accident reconstruction," and (4) the "broad discretion" accorded to the trial judge in determining whether the opinion testimony of "this" expert witness "will" be of "appreciable help" to a jury on "this subject," I am of the firm opinion that the exclusion of the opinion by Mr. Talbott was not an abuse of discretion and that the judgment of the trial court, as affirmed by the Court of Appeals, should also be affirmed by this court.

The effect of the opinion by the majority is to narrow the "broad discretion" previously accorded to trial judges in deciding whether to admit expert opinion testimony in all cases to the question whether such an opinion would be of "help" to the jury in the sense in which that term was discussed by this court in *Yundt v. D & D Bowl, Inc., supra.* In that case the majority of this court, in an opinion by Bryson, J., held (at 259) that the question to be decided is whether the subject matter of the question to be decided by a jury is of such a nature that the jury is "equally qualified" to decide that question "without help from opinion testimony," or whether the subject matter of the question is of such a nature that the jury is "not equally qualified" to decide that question and "needs help to find the truth."

As stated by McCormick, Evidence § 13, at 27-30 (2d ed 1972) some courts emphasize "this aspect of the rule." As also stated by McCormick, *supra,* at 31, however, expert opinion will not be admitted "if the court believes that an opinion based upon the facts in evidence cannot be reasonably grounded upon those facts." In *Yundt* it was not necessary for this court to consider that area of discretion by the trial court because it affirmed the exclusion of the opinion evidence upon the ground that the subject matter of the question to be decided by the jury in that case was of such a nature as to make it proper for a trial judge to exclude the opinion evidence in that case.

When the question to be decided by the jury is the "point of impact" in an automobile accident case, particularly one without eye witnesses, an opinion by a properly qualified expert witness based upon a proper foundation may well be of "help" to a jury in that sense of the word.

According to the majority, however, once it appears that the opinion testimony by an expert witness would be of such "help" to a jury in that sense, the discretion of the trial judge ends and the opinion testimony must be received, regardless of the sufficiency of the foundation for the opinion by the expert witness, which would then go only to the "weight" to be given by the jury to such an opinion, rather than to the question of the admissibility of the opinion, and also regardless of such additional factors as the presence of numerous eye witnesses.

With all due respect to the majority, this holding by it is contrary to views of writers on this subject and decisions by courts of other jurisdictions which hold, as stated by McCormick, *supra,* that expert opinions will not be received "if the court believes that an opinion based upon the facts in evidence cannot be reasonably grounded upon those facts." In other words, an expert opinion based upon an inadequate foundation does not have sufficient probative value to be of "appreciable help" to the jury.

The majority opinion also overrules the recent and unanimous decision by this court in *Marshall v. Martinson, supra,* in which this court affirmed the exclusion by a trial court of expert testimony not upon the ground that the issue to be decided by the jury was of such a nature that the jury was "equally qualified" to decide that issue, but upon the ground that the foundation for the expert opinion involved "so many varying factors" as to render his opinion "speculative." In addition, the majority opinion overrules, *sub silentio,* other decisions by this court in which the exclusion of expert opinion testimony by trial judges has been held to be proper for lack of a proper foundation (*see, e.g., Urbanski v. Johnson, supra,* 283 Or at 172, and *State Highway Comm. v. Compton, supra,* 265 Or at 344-45).[8]

Thus, the majority opinion represents an important change in the law of Oregon on the admissibility of

---

[8] The decision by the majority is also contrary to the position taken by both the Oregon Trial Lawyers Association and the Oregon Association of Defense Counsel in briefs submitted as amicus curiae at the request of the court to the effect that trial judges should have "broad discretion" to admit or exclude expert opinion testimony, and that in considering whether to admit such testimony the trial judge may properly consider such "factors" as the presence of eye witnesses.

expert opinion testimony by its limitation of the "broad discretion" previously accorded to trial judges to exclude such testimony when based upon an "unreliable" foundation and by thus requiring that expert opinion testimony be admitted when based upon foundations no more "reliable" than the foundation for the expert opinion in this case. This change in the law will have profound effects, not only in civil cases involving automobile accidents, medical malpractice, and property valuations (as in condemnation and tax cases), but also in criminal cases. Indeed, in criminal cases it will not only be the state which will be adversely affected, as in this case. Defendants in criminal cases, against whom expert testimony may be offered by the state, will also be adversely affected.

For all of these reasons, I dissent from the opinion by the majority.