Aaron G. HAYES,
*Appellant,*

*v.*

Robert G. HUARD,
*Respondent.*

(87-247-CV; CA A62328)

814 P2d 559

G. Dennis Halkides, Redding, California, argued the cause for appellant. With him on the briefs was Halkides & Morgan, Redding, California.

Garrison F. Turner, Medford, argued the cause for respondent. On the brief were Larry B. Workman, Steven H. Pratt and Frohnmayer, Deatherage, Pratt, Jamison & Turner, P.C., Medford.

Before Richardson, Presiding Judge, Joseph, Chief Judge,* and Deits, Judge.

* Joseph, C. J., *vice* Newman, J.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff appeals a judgment for defendant in this negligence action resulting from a collision in which plaintiff was seriously injured. The jury found for defendant. Plaintiff assigns error to the court's admission of a police officer's opinion testimony that defendant elicited on cross-examination respecting the speed of the vehicles on impact. We affirm.

Plaintiff was driving his car south on Cortez Street, and defendant was driving his pickup west on Balsam Drive in Klamath Falls. Plaintiff ran a stop sign at the intersection, and defendant's pickup hit plaintiff's car broadside. Plaintiff's theory of the case was that defendant was speeding when he entered the intersection. The posted speed limit on Balsam is 35 miles per hour. Plaintiff called two expert witnesses, a civil engineer and an expert in biomechanics, who testified that defendant's speed at impact, which one assessed at 45 and the other at 48.9 miles per hour, indicated a speed before braking of over 50 miles per hour.

Defendant's expert witnesses, a mechanical engineer and a consulting engineer, testified that defendant's speed at impact was somewhere between 30 and 35 miles per hour, with no evidence of braking before impact. Defendant and his passenger both testified that they were traveling at about 35 miles per hour when they entered the intersection.

As part of his case-in-chief, plaintiff called Officer Carlson, who had investigated the accident. On direct examination, Carlson testified that he had been with the police department for about ten years and that part of his standard training was to examine accident scenes for skid marks and glass or vehicle body parts to determine the point of impact. He said that he did not consider himself an expert in reconstructing speeds from skid marks.

On cross-examination, this exchange occurred:

"Q.  [By defendant's counsel:] Are you saying you don't feel qualified to pinpoint a specific speed based upon the physical evidence that you see at the scene?

"A.  [By Carlson] Correct.

"Q. Have you been to some training courses and schools where ranges of speeds are explained based upon physical evidence?

"A. Yes.

"Q. What schools have you been to in that regard?

"A. The schools taught by the board of police standards and training.

"Q. Is the purpose of these schools not to teach you how to pinpoint a specific speed like 36.3 miles per hour but rather to give you the training and knowledge to determine whether a vehicle may have been going between 40 and 50 or 20 and 30, something like that?

"A. That is correct."

Out of the presence of the jury, counsel for plaintiff objected to defendant's questioning of Carlson on the speed of defendant's vehicle on the ground that he was not an expert in accident reconstruction. Defendant's counsel made an offer of proof in which he explained that he did not intend to question Carlson as if he were an accident reconstruction expert but simply on the basis of his training and experience. The court overruled plaintiff's objection, citing OEC 702 and OEC 703, which pertain to expert opinion testimony. Carlson then testified that he estimated plaintiff's speed before impact to have been "between 15 and 25 to 30 miles an hour" and defendant's to have been "in the neighborhood of 25 to 35 miles an hour."

Carlson was not an accident reconstruction expert, and plaintiff did not call him or attempt to qualify him as one. Nevertheless, the only issue that either party discusses pertaining to the admissibility of his testimony is whether he was *in fact* an expert. The trial court received the evidence as expert opinion testimony under OEC 702 and OEC 703.[1] If there was an error in receiving the testimony, it may well be a simpler one than plaintiff hypothesizes: The problem is not whether Carlson's testimony demonstrated a lack of expertise, but that neither party purported to lay the necessary

---

[1] Defendant does not contend on appeal that the testimony was admissible under OEC 701 as lay opinion evidence. In any event, it is questionable whether we could affirm on that basis, because the trial court did not exercise its discretion to admit the testimony as lay opinion. *See State v. Stringer,* 292 Or 388, 394, 639 P2d 1264 (1982).

foundation to allow Carlson to testify as an expert. Indeed, defendant's attorney argued at trial that the evidence that he sought from Carlson concerned a matter "that you don't even need an expert to testify about."[2]

We conclude, however, that any error was harmless. In the first place, it was largely self-curing. Plaintiff's basis for contending that the evidence was improperly received is that Carlson's own testimony candidly revealed that he had little or no expertise in accident reconstruction. The evidence that he gave was put to the jury as being little more than rough estimates, and his qualifications, or lack thereof, were clearly presented. His testimony about, and qualifications for, speed estimation were juxtaposed against those of the four experts that the parties called, whose engineering and scientific credentials were made known to the jury and one of whom calibrated the speed at impact to tenths of miles per hour. Carlson's estimate of defendant's speed was materially identical to that of defendant's two experts and to the speed that defendant and his passenger testified that they were traveling. Under the circumstances, it is unlikely that the jury gave significant weight to Carlson's tenuous and somewhat self-impeaching evidence rather than to that of the eyewitnesses and the experts who testified about the speed of the vehicles.

Affirmed.

---

[2] We express no opinion about the correctness of that argument.