Argued September 15, reversed and remanded November 17, 1954,
petition for rehearing denied January 5, 1955

# KAISER *v.* STATES STEAMSHIP COMPANY
## 276 P. 2d 410

*John D. Mosser,* of Portland, argued the cause for appellant. With him on the briefs were Wood, Matthiessen, Wood & Tatum, of Portland.

*Nels Peterson,* of Portland, argued the cause for respondent. On the brief were Peterson and Pozzi and Sidney I. Lezak, of Portland.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN and PERRY, Justices.

PERRY, J.

This is an action for personal injuries brought by the plaintiff against the defendant under the Merchant

Marine Act of 1920, 46 USCA, § 688, commonly called the Jones Act.

The plaintiff was employed by the defendant as a ship's carpenter aboard the SS Oregon. He entered upon his duties aboard this vessel on May 29, 1951, and left the vessel about August 1, 1951, at Tacoma, Washington.

The plaintiff testified that he was injured at sea while attempting to remove a bolt on what is commonly known as a "strongback" (a piece of steel about three or four inches wide and about 30 feet long) which holds the canvass that protects the hatches and the hatches tight; that the bolt was rusted and he tried to relieve this condition by using penetrating oil; that after waiting for the penetrating oil to work in and loosen the bolt, he tried to remove the bolt with his little wrench and couldn't break it loose, so he procured two pipe wrenches approximately 24 inches long, but being unable to remove the bolt with the pipe wrenches, he obtained a piece of pipe about three feet long, fitted it over a pipe wrench, and when he exerted pressure thereon the bolt broke and he fell into a "bunch of lumber" near the hatch. Plaintiff further testified that he had requested permission of the chief mate, who was his superior officer, to use a hacksaw to remove the bolt, but was not permitted to use that method.

The plaintiff obtained a verdict and the defendant has appealed.

The defendant's first assignment of error is based upon the failure of the court to direct a verdict for the defendant, and may be divided into the following issues: (1) The testimony of the plaintiff was of no probative value, and, therefore, there was no evidence of defendant's negligence; (2) there was no evidence other than plaintiff's own testimony to establish that

the alleged accident was the proximate cause of his disability.

■ The first point advanced by the defendant is based upon the proposition that the plaintiff denied any recollection of the alleged accident, and having denied any recollection of this accident, he could not testify as to what occurred. The defendant relies upon the following statements made by the plaintiff during cross-examination:

"A * * * It's been so much in mind that I'm blank, to tell the truth.

"Q You don't remember anything about any of these accidents?

"A That's correct.

"Q Nothing about any of these accidents?
"A No."

The difficulty with the defendant's position as to this matter is that the defendant in cross-examination of the plaintiff, either for the purpose of impeachment or to show that the plaintiff was a malingerer, asked the plaintiff concerning other claims made by him for back injuries received while sailing on other ships, and also about a claim he had pending before the Oregon State Industrial Accident Commission to reopen his previous claim for back injuries received while employed by Timber Structures Corporation. The plaintiff had previously testified, on direct examination, generally as to all of the facts of his claimed injuries while aboard defendant's vessel, and we are not able to say from his answers to these questions that it must be absolutely inferred that he was including in his answers the occurrence on board the SS Oregon, which is the basis of his claim against the defendant. From our study of the record, it appears to us that the plaintiff, although

confused, was answering generally in connection with other accidents and claims about which he had just been questioned.

The defendant also advances the proposition that the "plaintiff's testimony was in part admittedly false and generally so equivocal, self-contradictory, and shifting to meet the exigencies of this case as to render it of no probative value."

The basis of this proposition of the defendant's is that the plaintiff on direct examination testified that he had suffered a back injury at Timber Structures in the fall of 1950, and was off work for about nine or ten days. On cross-examination he asserted the accident had disabled him to a certain extent, but the injury was not serious and would not have kept him from working; that he was not hospitalized. Finally, he admitted he had been paid compensation for the injury for a period of four, five, or six months; that the doctor thought the injury was serious, and he thought it was pretty serious. Also, on cross-examination he was asked as to any other accidents he might have had, and he testified his only other accident was when he hit his hand with a hammer. However, on further cross-examination he admitted that in his deposition taken prior to the trial in this cause he testified that while employed on the ship Alexander Baranoff he suffered a back injury and had made a claim therefor, but stated that the statement made in the deposition was incorrect. He also admitted that he made a claim for back injuries on the ship James Devereaux, but he had done that solely to get off of the ship because the ship carried nothing but alcohol and every man on the ship was intoxicated. Then again concerning his claim for compensation for injuries received at Timber Structures after he left the SS Oregon, he first testi-

fied he had made no claim against Timber Structures, but later admitted that he had reopened his claim and was still making a claim through the Industrial Accident Commission in a suit then pending in Multnomah county.

The plaintiff's testimony was confused, and at points contradictory, as to what doctors had treated him in the Orient. Subsequently the defendant asked the plaintiff whether or not he had seen doctors, other than those the plaintiff's and defendant's attorneys and the Union had sent him to, since he came off the SS Oregon. He first testified "none that I know of". Finally, however, he admitted he had seen the State Industrial Accident Commission doctors.

When asked about his reopened claim pending before the Industrial Accident Commission for injuries received at Timber Structures, plaintiff admitted he had testified in a hearing before the Commission that he was unemployable as a result of his accident at Timber Structures, but that the statement made at the hearing was not true.

■ The testimony of the plaintiff narrated by us in the form of conclusions goes no further than to attack his credibility as a witness; the testimony of a party appearing on his own behalf is weighed in the same manner as that of any other witness: *Radtke v. Taylor,* 105 Or 559, 210 P 863, 27 ALR 1423; and the weight to be given to his testimony is determined by a jury, they being the exclusive judges of his credibility. § 2-204, OCLA, now ORS 44.370.

■ The defendant also contends the plaintiff's admission that his testimony before the State Industrial Accident Commission almost a year after the alleged injury on the SS Oregon, to the effect that his disability was due to an accident at Timber Structures,

now estops him from claiming that he suffered the same injuries on defendant's ship. We cannot so construe this testimony. In his suit to reopen his claim with the State Industrial Accident Commission, the plaintiff was asking a further adjudication of his primary injury. In the present action pending before the court, the plaintiff was in part asking damages for an aggravation of that primary injury. The most that can be said for this testimony is that it tended to discredit plaintiff's claim that he was in good health when hired by defendant, and, that by reason of the accident aboard the defendant's ship, there was, in fact, an aggravation of his previous back condition.

■ The defendant's second proposition, that there was no evidence other than the plaintiff's own testimony to establish that the accident was the proximate cause of his disability, seems to be based upon the proposition that the medical testimony is insufficient to establish that the plaintiff's present disability to his back is in anywise connected with any injury he may have suffered while employed on the defendant's vessel. The defendant did not request that any partciular injuries claimed by the plaintiff, which the defendant considered unproven as a proximate result of the defendant's alleged negligence, be taken from the consideration of the jury. The defendant, therefore, is not in a position to raise that matter in this court.

The plaintiff's complaint, as we view it, alleged other injuries than the aggravation of his previous back injury, the complaint reading as follows:

"* * * the plaintiff was catapulted backwards and downwards, causing multiple bruises and contusions to various parts of his body, and particularly to his right wrist, head, face, ribs, back and right leg, and plaintiff sustained a severe tearing,

twisting and wrenching of the bones, tendons, ligaments and soft tissues of his back, from all of which the plaintiff was rendered unconscious and has been rendered sick, sore, nervous and distressed; that plaintiff had had previous injury to his back and the condition of his back was greatly aggravated and worsened from said injuries. That plaintiff has sustained permanent injuries to his back and legs and all to his damage in the sum of $75,000.00.''

And a portion of the visible injuries complained of by the plaintiff are corroborated by the testimony of others. A similar contention was answered by this court in *Henderson v. U.P.R.R. Co.,* 189 Or 145, 152, 219 P2d 170, where we said:

"The other two grounds of the motions are based upon what we think to be the erroneous assumption that the amputation of plaintiff's leg was the only injury for which he sough recovery. The complaint contains allegations that as a result of the defendant's negligence 'the plaintiff suffered and sustained a severe injury to his left leg', and that 'the plaintiff suffered and sustained severe contusions and lacerations and abrasions thereon and thereto and the veins, arteries, ligaments, nerves and tissues of the plaintiff's left leg were badly injured and damaged and the plaintiff was rendered sick and incapacitated'. There was substantial evidence in support of some of these allegations, so that even though the evidence were insufficient to show that the negligence charged was the proximate cause of the loss of plaintiff's leg, still he would have been entitled to go to the jury on the other injuries alleged.''

■ The defendant's second assignment of error is based upon the refusal of the court to withdraw from the consideration of the jury the following allegation of defendant's negligence:

"In failing and neglecting to inspect the 'nut' and bolt upon which this plaintiff was required to

work at and prior to requiring this plaintiff to work thereon.''

The plaintiff offered no testimony to show that there had not been a proper inspection, nor did he offer any testimony to show that if a proper inspection had been made that it would have disclosed any defect in the bolt. On the other hand, the defendant's testimony conclusively shows an inspection had been made, and a discovery of the bolt being frozen, or so rusted that it was not readily removable, was what prompted the ship's officer to direct the plaintiff to remedy this condition. There being no evidence of a failure to inspect, the trial court erred in submitting this specification of error to the jury.

The plaintiff contends this was not error as the jury is entitled to consider and determine the negligence of the employer by viewing his conduct as a whole, citing *Blair v. B. & O. R. Co.*, 323 US 600, 65 S Ct 545. This citation is authority only to the effect that all of the conduct of a defendant may be considered in determining whether or not a defendant is negligent, but it is not authority for the position taken by the plaintiff. In that case the defendant moved for judgment notwithstanding the verdict, submitting the conclusion that there was no evidence of its negligence, and the court there said ''* * * where the several elements from which negligence might be inferred are so closely interwoven as to form a single pattern, and where each imparts character to the others'', all of the actions of the defendant may be taken into consideration in determining the negligence of the defendant. That is not the case here, for by its instructions, as set out below, the trial court, in effect, granted the jury the privilege of returning a verdict against the defendant for negligence that had not been committed

by the defendant. The trial court in instructing the jury upon plaintiff's theory of defendant's claimed negligence said:

> "That said defendant at said time and place, its officers, and agents, were careless and negligent in respect to this plaintff in the following particulars:
>
> "Specification 2: In failing and neglecting to inspect the nut and bolt upon which this plaintiff was required to work at, and prior to requiring this plaintiff to work thereon.
>
> "Specification 3: In failing and neglecting to permit this plaintiff to remove said nut and bolt by cutting the same and replacing with a new nut and bolt."

and then instructed the jury as follows:

> "I will advise you that proof of all specifications or charges of negligence presented by the plaintiff in his complaint, and submitted to you, is not necessary nor is it required, but the proof by preponderance of the satisfactory evidence of *any one of those specifications* I have submitted to you would be sufficient to establish negligence on the part of the defendant, providing that you find the defendant was negligent in any one or more of those particulars." (Italics ours).

It must readily be seen that to submit to the jury a matter of negligence upon which there was no evidence and upon which the jury may have based its finding of of the defendant's negligence is reversible error.

This cause must be reversed and remanded for a new trial, and it is so ordered.