Argued June 18, reversed September 17,
reconsideration denied October 25, petition
for review allowed November 13, 1979

W. R. CHAMBERLIN & COMPANY, et al
*Appellants,*
*v.*
NORTHWESTERN AGENCIES, INCORPORATED,
*Respondent.*
(No. 415 336, CA 10846)
600 P2d 438

Jerard S. Weigler, Portland, argued the cause for appellants. With him on the briefs were Rex E. H. Armstrong and Lindsay, Nahstoll, Hart, Neil & Weigler, Portland.

Jeffrey M. Batchelor, Portland, argued the cause for respondent. With him on the brief were John Gordon Gearin and Gearin, Landis & Aebi, Portland.

Before Schwab, Chief Judge, and Tanzer and Roberts, Judges.

TANZER, J.

## TANZER, J.

This is a maritime insurance case in which plaintiff Pacific Hawaiian Lines[1] alleges that defendant insurance agency negligently failed to procure the full amount of insurance which plaintiffs requested and paid for or to verify that full coverage had been obtained. Plaintiff suffered a loss when two of its barges were damaged and received only 85 percent of the compensation for which they paid premiums. Plaintiff then brought this declaratory judgment action alleging that defendant failed to use due diligence in its effort to obtain full coverage. The jury returned a verdict for defendant. On appeal, plaintiff contends that its motion for a directed verdict should have been granted. We agree that plaintiff proved its case as a matter of law. Accordingly, we reverse the judgment for defendant.

■ The insurance in question was hull and machinery coverage for two barges. The policy was a subscription policy, in which various insurance companies sign up to cover a certain percentage of the risk. When an agent of an "admitted" insurance company—one licensed in Oregon—signs the subscription policy, the signature is binding on the company. Forty-five percent of the coverage was obtained in this way. The remainder was signed for by James Moore, a San Francisco broker, who signed on behalf of Puritan Marine Insurance Company of Boston, a nonadmitted company, which in turn placed the risk with Lloyd's of London and the Institute of British Underwriters. Moore's signature was not binding on the British companies. This latter type of coverage is verified by a cover note. In this case, the cover note was sent back from the British companies to Puritan Marine to Moore to defendant, but it accepted only 40 percent of the risk, not 55 percent. Neither Moore nor defendant

---

[1] The rights of the other plaintiffs appear to be derivative. Henceforth, for convenience, references to plaintiff do not distinguish between Pacific Hawaiian Lines and the other plaintiffs.

[127]

noticed this deficiency in coverage. Consequently, plaintiff recovered only 85 percent of the loss caused by the accidents to the two barges. Plaintiff claims damages equal to 15 percent of its loss.

■ The case was tried on a theory of negligence or lack of due diligence. *Cf. Joseph Forest Products v. Pratt,* 278 Or 477, 480, 564 P2d 1027 (1977). To prevail on appeal, plaintiff's proof must show conclusively that defendant's actions did not conform to a standard of care that prevailed in the maritime insurance industry. The parties agree that expert testimony was required to establish the applicable standard of care for defendant.

Plaintiff contends that the evidence establishes as a matter of law the following essential elements of its case:

1. That defendant agreed to obtain or to attempt to obtain full insurance coverage for the hull and machinery of plaintiff's barges,

2. That only 85 percent of that coverage was obtained for the period in question,

3. That defendant had a duty as plaintiff's insurance agent to verify that all the coverage listed in the subscription policy had actually been obtained,

4. That defendant failed to exercise reasonable care in securing or verifying the insurance coverage,

5. That plaintiff's barges were damaged during the policy period, and

6. That 15 percent of the damage was not recovered from any insurance company because of defendant's failure to insure 15 percent of the value of the barges.

There is no serious dispute that the full coverage listed on the subscription policy was not obtained, that plaintiff's barges were damaged, and that plaintiff recovered only 85 percent of its losses. The critical question is whether plaintiff proved conclusively that

defendant had a duty to verify the insurance coverage and that defendant breached that duty.

■ Defendant first contends that plaintiff failed to establish a duty of verification because plaintiff's expert did not express an opinion as to the applicable standard of care for a reasonable insurance broker in the situation presented in this case. This argument is based only on that fact that plaintiff's expert testified in the first person rather than in the third person in response to plaintiff's question as to what defendant's president, Wynkoop, should have done in this case.[2] Plaintiff's argument is of words, not substance. Taken in context, the expert's answer clearly was intended to express the applicable standard of care as being that a marine insurance broker such as he should secure a cover note to verify that the insurance had been placed as ordered.

Defendant's second contention is that the testimony of plaintiff's expert was contradicted by expert testimony of Wynkoop, thus making a jury question. Wynkoop was asked three times whether it was part of his job to verify that the nonadmitted insurance companies had actually accepted the coverage listed in the subscription policy. Each answer was evasive or equivocal; none of his responses contradicted the testimony of plaintiff's expert that he had a duty to verify the coverage. Wynkoop's first response was:

> "Usually when you have Lloyd's binder or documents, the official document is many months late in coming to the United States. And of course, there is [sic] no London underwriters that come over and sign the policy, so to speak."

This answer is simply nonresponsive. His second answer to the same question was:

> "It is a repetitious job that we do on a very sizable [sic] scale. In this case, the document was delivered to

---

[2] Plaintiff's expert testified:

"* * * [A]s a marine broker, I would have secured a cover note, to verify myself where it was placed."

[129]

apparently James Moore on October the 15th, which is some time after the effective date of the policy."

This answer was an attempted excuse, not a denial, and it essentially confirms that checking of cover notes was done carelessly. His third answer to the same question was:

"To the extent that James Moore issued a binder in San Francisco, Mr. Moore, who was perfectly reputable, signed the subscription policy, and of course, his signature was the approval."

Like the first two responses, this one avoids a direct answer to the question. The fact that Moore was a reputable broker does not contradict plaintiff's expert's testimony that Wynkoop should have checked the cover note to verify coverage. Wynkoop did not explain what he meant by the statement that Moore's signature constituted "approval," but Moore clearly testified that he had no authority to bind Puritan Marine or either of the British insurers to specific coverage. Moore's testimony is consistent with the general testimony regarding the effect of a broker's signature on behalf of a nonadmitted insurance company on a subscription policy. Wynkoop did not testify that he thought Moore had authority to bind a nonadmitted company; nor did he testify that he was entitled to assume full coverage in the absence of a special notification from Moore.

■ ■ Defendant's final contention is that even if plaintiff's expert testimony can be construed to be the expression of an opinion that defendant's conduct fell below the applicable standard of care, the jury was not required to accept that opinion. The credibility of an expert witness is ordinarily a matter for the jury. *See Wulff v. Sprouse-Reitz Co., Inc.*, 262 Or 293, 305, 498 P2d 766 (1972); Oregon Uniform Jury Instruction 2.07. However, the court should decide the case as a matter of law when the jury could not reasonably find otherwise. *See Palmer v. Van Petten Lbr. Co.*, 265 Or 347, 349-351, 509 P2d 420 (1973); *Rickard v. Ellis*, 230

Or 46, 51-52, 368 P2d 396 (1962). In *Wiebe v. Seely, Administrator*, 215 Or 331, 343-44, 335 P2d 379 (1959), the court adopted the following language:

" '* * * But when the testimony of witnesses, interested in the event or otherwise, is clear and convincing, not incredible in the light of general knowledge and common experience, not extraordinary, not contradicted in any way by witnesses or circumstances, and so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinarily intelligent mind, then a question has been presented for the court to decide and not the jury. * * *' "

In this case, the evidence that defendant's failure to verify the amount of the cover note was a failure to exercise the due diligence expected of a maritime insurance broker is clear, convincing, credible, ordinary and uncontradicted. A jury could not reasonably find otherwise and the motion for directed verdict should have been allowed.

■ The evidence shows conclusively that plaintiff paid an $85,000 premium for insurance coverage, that only 85 percent of the coverage was obtained, that defendant failed to notice the 15 percent shortfall of which he had been notified, and that plaintiff recovered only 85 percent of the losses. Defendant could have discovered the deficiency in coverage by checking the cover note which was returned by the British insurance companies, but failed to do so. Plaintiff's expert testified that a marine insurance broker should have verified coverage by checking the cover note. No one testified that this precaution was not reasonably necessary. We conclude that the jury could not reasonably find that due diligence did not require such a simple precaution.

Reversed.