Argued and submitted February 5,
reversed and remanded May 28,
petition for rehearing denied July 2, 1980

# W. R. CHAMBERLIN & COMPANY, et al,
## *Respondents,*
### *v.*
# NORTHWESTERN AGENCIES INCORPORATED,
## *Petitioner.*

### (CA 10846, SC 26543)

611 P2d 652

Jeffrey M. Batchelor, of Gearin, Landis & Aebi, Portland, argued the cause and filed briefs for petitioner.

Rex E. H. Armstrong, Portland, argued the cause for respondents. With him on the briefs were Jerard S. Weigler, and Lindsay, Nahstoll, Hart, Neil & Weigler, Portland.

Before Tongue,** Presiding Justice, and Howell, Lent and Linde, Justices.

LENT, J.

---

**Tongue, J., did not participate in this decision.

### LENT, J.

The issue presented in this case is whether the weight of an uncontradicted opinion by claimant's[1] expert witness[2] is exclusively within the jury's province.

Plaintiff is a maritime shipping company. Defendant is a company in the business of obtaining insurance for others. Plaintiff brought a declaratory judgment action alleging that defendant negligently failed to procure or verify that the full amount of insurance requested by plaintiff had been obtained, and that as a result of defendant's negligence plaintiff suffered a monetary loss.

The case was tried to a jury which returned a verdict for defendant. The Court of Appeals reversed the judgment for defendant, holding that the plaintiff's motion for a directed verdict should have been granted because the jury could not reasonably reject plaintiff's expert witness' opinion that defendant's conduct "was a failure to exercise the due diligence of a maritime insurance broker." 42 Or App 125, 600 P2d 438 (1979). This court allowed review, ORS 2.520, 288 Or 81 (1979).

The following facts are stated in the light most favorable to defendant, in whose favor the jury found. *See, e.g., Shepler v. Weyerhaeuser Company,* 279 Or 477, 484, 569 P2d 1040 (1977).

In 1970 plaintiff retained defendant, through its agent Leonard Wynkoop, to obtain hull and machinery insurance coverage for its barges. Defendant

---

[1] We use the word "claimant" to designate the party having the burden of proof on a given issue.

[2] We use the term "expert witness" to mean a witness who is qualified, by reason of special knowledge or skill gained from experience, training, or education in a particular field, to express an opinion on a matter within that field that will be of assistance to the trier of fact in discharging the trier's function. *Cf. Galego v. Knudsen,* 281 Or 43, 47, 573 P2d 313 (1978).

issued a one-year subscription policy covering the period September 26, 1970 to September 26, 1971. A subscription policy is a policy underwritten by several insurance companies which agree to cover various percentages of the risk. Forty-five percent of the hull and machinery insurance was covered by "admitted" companies, that is, companies licensed to write insurance in Oregon. A signature of an agent of such an insurer is binding on the company, and no further verification is needed.

The remaining 55 percent of the risk was placed with British insurance companies: Lloyd's of London and British Institute. Defendant obtained this placement through James E. Moore & Company, a California insurance broker who signed on behalf of Puritan Marine Insurance Company of Boston, a non-admitted company. Puritan Marine in turn placed the risk with the British companies. A "cover note" is a statement issued by nonadmitted companies within 30 days after signing a subscription policy verifying coverage until replaced by a certificate of insurance. A cover note dated October 9, 1970, was sent by the British companies to Puritan Marine, then to Moore, then to defendant.

A second one-year subscription policy was issued by defendant on September 7, 1971, covering the period September 26, 1971 to September 26, 1972. This policy was patterned after the first policy, again placing 55 percent of the risk with British companies. The cover note dated October 20, 1971, however, shows that the British companies agreed to underwrite only 40 percent of the hull and machinery value. There is no evidence to show that this cover note reached the defendant during the policy period. The defendant's agent, Mr. Wynkoop, stated that it was his custom to rely on Moore's signature on the subscription policy to verify the coverage.

The plaintiff's barges were damaged in three separate marine accidents during the period covered by the second insurance policy. Plaintiff recovered

only 85 percent of the loss and initiated this action against defendant to recover the 15 percent deficit.

Defendant first argues that defendant's expert witness' testimony contradicts plaintiff's expert witness' testimony "that defendant's conduct fell below the applicable standard of care" and, therefore, a jury question was presented. Defendant secondly argues that even if plaintiff's expert witness' opinion is uncontradicted, the jury is not bound to accept it in this case. We allowed review to consider the second contention. Because we conclude that the jury was not bound to accept the plaintiff's expert witness' opinion, we need not decide whether there was a conflict in the evidence.

Plaintiff's expert, an insurance broker experienced in marine insurance, testified on direct examination as follows:

"Q   Mr. Bowden, assuming that Exhibit No. 5 [the subscription policy] * * * was issued in September 1971, by a surplus lines agent[3] in Oregon, do you have an opinion as to whether anything further was required on the part of the Oregon agent in connection with that policy?
"A   Yes, the Oregon Surplus Line —

"Q   You do have an opinion?
"A   Yes, I do.

"Q   And could you tell us what the opinion is?
"A   Well, the Oregon Surplus Lines' rules require that you set forth the percentage in Lloyd's and the percentage in [British] Institute companies and list those.

"Q   And do you have an opinion whether anything further should be done by the agent with regard to the security?

---

[3] Plaintiff's expert, Mr. Bowden, previously testified that a surplus line agent is an insurance agent licensed to place business with nonadmitted insurance companies.

"A   Well, as a marine broker, I would have se-
cured a cover note, the original placing cover note, to
verify myself where it was placed.[4]

"Q   And the cover notes that you have looked at,
that are Exhibit No. 7, do they verify the 55 percent
of cover in Lloyd's and the London Institute com-
panies?

"A   Yes. It states that Lloyd's and Institute com-
panies placed a total of 55 percent.

"Q   On the policy?

"A   On the subscription page of the policy.

"Q   How about on the cover notes?

"A   No. The cover notes show that only 40 per-
cent was placed in Lloyd's [and] Institute companies."

We regard this opinion testimony as setting
forth what a reasonable person would have done in
these circumstances and that defendant marine insur-
ance broker's conduct in failing to verify coverage by
the securing of a cover note was failure to do what a
reasonable person would have done in these circum-
stances to protect his client, the plaintiff, from an
unreasonable risk of harm.[5]

This opinion testimony was necessary in this
case because the reasonableness of the conduct of a
marine insurance broker is not likely to be within the
knowledge of the average juror. *See Getchell v. Mans-
field,* 260 Or 174, 179, 489 P2d 953 (1971). We have
assumed that the defendant did not introduce conflict-
ing evidence on this issue.

The plaintiff's expert testified that the broker
should secure a cover note, and in this case the policy
listed 55 percent coverage, but the cover note

---

[4] The defendant points out that this response is insufficient to establish
the standard of care of a reasonable marine insurance broker because the
response is given in the first person. The Court of Appeals stated that taken
in context, the expert's answer was intended to express the applicable
standard of care. 42 Or App at 129. Although the answer is technically
insufficient, we do not reject the Court of Appeals' construction of this
testimony.

[5] *Compare,* 2 Restatement (Second) of Torts, §§ 282 and 283.

verified only 40 percent coverage, thereby implying that had the defendant secured the cover note, the discrepancy would have been corrected. The Court of Appeals stated that the plaintiff's expert's testimony was "clear, convincing, credible, ordinary and uncontradicted." That court held that a jury could not reasonably find otherwise; therefore, the plaintiff's motion for a directed verdict should have been granted. 42 Or App at 131.

■ ■    The question to be decided is whether the jury should have been bound to accept the expert's uncontradicted opinion. We hold that the jury may reject this conclusion because the weight of the opinion of an expert witness is a matter particularly within the province of the jury.

This court has stated that the testimony of expert witnesses is to be received and weighed with caution. *Jones v. Jones,* 276 Or 1125, 1130, 557 P2d 239 (1976); *Wallace v. American Life Ins. Co.,* 111 Or 510, 225 P 192, 227 P 465 (1924); *Baber v. Caples,* 71 Or 212, 138 P 472 (1914). In *Baber* we quoted from Taylor on Evidence § 58 (8th ed):

> "Perhaps the testimony which least deserves credit with a jury is that of *skilled witnesses.* These gentlemen are usually required to speak, not to facts, but to *opinions;* and, when this is the case, it is often quite surprising to see with what facility and to what an extent their views can be made to correspond with the wishes or the interests of the parties who call them. They do not, indeed, willfully misrepresent what they think; but their judgments become so warped by regarding the subject in one point of view that, even when conscientiously disposed, they are incapable of expressing a candid opinion." (original emphasis) 71 Or at 221.[6]

---

[6] We have held that the jury should not be instructed to weigh expert opinion with caution because to do so would invade the province of the jury as judges of the credibility of the witnesses. *See Kennedy v. Industrial Acc. Com.,* 218 Or 432, 436, 345 P2d 801, 86 ALR2d 1032 (1959). *Cf.,* ORS 44.370; ORS 17.250; *Kaiser v. States SS Co.,* 203 Or 91, 96, 276 P2d 410 (1954); *Graham v. Coos Bay R. & N. Co.,* 71 Or 393, 416-417, 139 P 337 (1914).

Even if a jury accepts that an expert witness has expressed an opinion which he believes to be entirely truthful, the jury may not be persuaded on the ultimate issue to be decided.

We conclude that the weight of plaintiff's expert witness' opinion was properly left to the jury. The judgment of the Court of Appeals is reversed and the case is remanded for reinstatement of the judgment for defendant.