Argued and submitted May 8, reversed June 11, 1985

TIEDEMANN et vir,
*Respondents on Review,*

*v.*

RADIATION THERAPY CONSULTANTS,
P. C. et al,
*Petitioners on Review.*

(CC 135832; CA A31402; SC S31549, S31552)

701 P2d 440

Cynthia S.C. Shanahan, of Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, filed the petition and argued the cause for petitioners on review Radiation Therapy Consultants, P. C., et al. (SC S31552).

Keith J. Bauer, of Parks & Bauer, Salem, filed the petition and argued the cause for petitioner on review Salem Hospital (SC S31549).

John C. Pinkstaff, Newberg, argued the cause for respondents on review.

JONES, J.

## JONES, J.

The defendants in this medical malpractice action appeal from the decision of the Court of Appeals which held that the trial court erred in allowing the defendants' motion for summary judgment. We reverse the Court of Appeals and reinstate the trial court judgment in favor of the defendants.

The plaintiffs[1] sued the defendant doctors, the professional corporation of which the doctors were members and the hospital for which they were agents in connection with alleged injurious treatment. The doctors administered radiation treatments to plaintiff Deanna Tiedemann who alleged that the treatments were performed negligently and that the doctors failed to apprise her of material risks entailed in the procedures.

Plaintiffs alleged that defendants were engaged to administer radiation therapy to Mrs. Tiedemann for treatment of cancer of the cervix. According to plaintiffs' amended complaint, prior to engaging the defendants, one of the defendants, a Dr. Thompson, told Mrs. Tiedemann that as a result of radiation therapy she might suffer loss of appetite, nausea, tiredness, diarrhea and loss of hair, but that defendants failed to inform her of the risk of injury to her small or large bowel. Her sole allegation concerning defendants' negligence in failing to obtain informed consent was as follows:

"Defendants Thompson, Allen, Williamson and Consultants breached their duty in failing to disclose to plaintiff all of the material risks involved in radiation therapy to be administered to plaintiff. If plaintiff had been informed of all the material risks of such treatments, she would not have submitted to the radiation therapy treatments and would not have sustained the injuries herein alleged to have occurred."

In addition to the allegation concerning so-called "informed consent,"[2] the complaint alleged other acts of negligence in four particulars as follows:

---

[1] Two plaintiffs were named in the amended complaint: Deanna Tiedemann sued for personal injury damages and her husband, Ray Tiedemann, sued for loss of consortium damages. The use of the singular "plaintiff" refers to Mrs. Tiedemann.

[2] In *Getchell v. Mansfield*, 260 Or 174, 177-78, 489 P2d 953 (1971), we discussed the concept of informed consent:

"'The concept involved has been labeled, perhaps unwisely, 'informed consent.' In *Mayor v. Dowsett*, 240 Or 196, 234-235, 400 P2d 234 (1965), we accepted the concept. In that case the trial court refused to submit to the jury an allegation

"1. They performed the radiation therapy on an 'extended field' of plaintiff's body, thus exposing more of plaintiff's intestinal tract than is properly exposed in treating cancer of the cervix.

"2. They administered radiation at a faster delivery rate than is commonly used for extended fields in treating cancer of the cervix.

"3. They failed to adjust the rate of delivery and volume of tissue exposed to radiation treatment as a precaution where the plaintiff had recently before had surgery which commonly causes bound loops of intestine fixed by adhesions.

"4. They failed to obtain an adequate history of plaintiff's previous condition before starting the administration of radiation so as to determine if the therapy program designed for plaintiff was appropriate."

The defendants moved for summary judgment on the basis of a deposition and an affidavit of Dr. Thompson. The affidavit states:

"1. I am a regularly licensed and practicing physician engaged in performing radiotherapy and I am a member of Radiation Therapy Consultants, P.C. I have personal knowledge of all matters contained herein.

"2. The treatment rendered by the individuals comprising the Radiation Therapy Consultants, P.C., including the description of the treatment and its possible effects, the testing performed prior to therapy and the irradiation therapy, was consistent with the degree of care, skill and diligence which is used by ordinarily careful physicians performing the specialty of radiotherapy in a same [or] similar circumstance in the state of Oregon. In my expert opinion, the treatment of Mrs. Tiedemann was not negligent."

Mrs. Tiedemann offered her own recollection as to the issue of informed consent in an affidavit. However, plaintiff offered no controverting medical expert evidence and admitted that no such evidence existed. The trial court

---

that the defendant physician failed to explain to plaintiff the dangers of a spinal anesthetic. We held the trial court erred. 'The general rule regarding the duty of a physician to inform his patient of known dangers is not questioned.' 240 Or at 235. We also held that while surgery without a consent based upon full knowledge by the patient might be a technical battery, such conduct also can be pleaded and proved as negligence." (Footnote omitted.)

granted summary judgment in favor of the defendants on both the negligence and informed consent issues.

The plaintiff appealed to the Court of Appeals, contending that Dr. Thompson's affidavit consisted solely of opinion evidence and that plaintiff was not required to controvert it to resist the summary judgment motions. The Court of Appeals, relying on its own decision in *May v. Josephine Memorial Hospital,* 70 Or App 620, 690 P2d 1118 (1984), held that expert opinion evidence cannot be sufficient in itself to support a summary judgment on the issue of whether a defendant physician in a malpractice case had satisfied the applicable standard of care. In the case at bar, the Court of Appeals reasoned that the *"credibility* of an affiant's *statement of a fact* is not the issue. The question is whether an expert's *opinion* can *conclusively establish a fact,* and that question was answered in May." 71 Or App at 672 (emphasis in original).

■ We agree that the question is whether an expert's opinion can establish a fact conclusively, but we respectfully disagree with the Court of Appeals' conclusion on that issue. The expert's opinion in this case needs to be analyzed in connection with the Oregon Rules of Evidence. If the case were at trial, would Dr. Thompson be allowed to testify in accordance with the affidavit? The answer is "yes" and "no," because part of the affidavit is an opinion of fact and part an opinion of law. The former is proper; the latter is not.

We now turn to the statements in the affidavit:

"I am a regularly licensed and practicing physician engaged in performing radiotherapy and I am a member of Radiation Therapy Consultants, P.C. * * *"

This testimony is admissible under OEC 702 to demonstrate that this witness, albeit a party, possesses scientific, technical or other specialized knowledge qualifying her to testify in the form of an opinion.[3]

■ Dr. Thompson's next statement, "I have personal

---

[3] OEC 702 provides:

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

knowledge of all matters contained herein," is a prelude to paragraph 2 of the affidavit which is referring to the treatment. In other words, the doctor is saying that she has personal knowledge of the treatment, its possible effects, and the testing performed prior to the therapy, as well as personal knowledge about the radiation therapy itself. This testimony is admissible under OEC 703,[4] which provides that the facts or data in a particular case upon which an expert bases an opinion may be those perceived by the expert at or before the hearing.

■    The affiant then concludes that based upon her perception the treatment "was consistent with the degree of care, skill and diligence" exercised by "ordinarily careful physicians performing the specialty of radiotherapy in the same [or] similar circumstances" in this state. This testimony is admissible under OEC 705,[5] which provides that an expert may testify in the form of an opinion without prior disclosure of the underlying facts or data. This testimony is an opinion about a fact. The opinion is not objectionable because it embraces an ultimate issue of fact to be decided by the trier of fact. OEC 704[6] so provides.

■    The last sentence, "In my expert opinion, the treatment of Mrs. Tiedemann was not negligent," we consider to be a mere gratuity and neither adds nor subtracts from our discussion. It is a pure opinion which merely tells the jury which result to reach. Such testimony is directly condemned

---

[4] OEC 703 provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

[5] OEC 705 provides:

"An expert may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

[6] OEC 704 provides:

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

by the commentary to OEC 704 which, adopting the commentary to the identical federal rule, states:

> " 'The abolition of the ultimate issue rule does not lower the bar so as to admit all opinions. Under Rule 701 and 702, opinions must be helpful to the trier of fact, and [under Rule 403 they must not unfairly prejudice, confuse or delay the proceedings]. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the matter of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.' McCormick section 12."

The plaintiff claims that the affidavit was nothing more than a general denial of negligence. Clearly, the affidavit was much more than a general denial, it was expert testimony on the key issues in the case.

■■    Plaintiff relies on the case of *W. R. Chamberlin & Co. v. Northwestern Agencies,* 289 Or 201, 611 P3d 652 (1980), to justify her position that no controverting expert opinion affidavit is necessary in this summary judgment proceeding. In *Chamberlin* we held that because a jury may reject the uncontradicted opinion of a plaintiff's expert witness, denial of a directed verdict in favor of the plaintiff, *i.e.,* the party bearing the burden of proof, was proper. 289 Or at 207. *Chamberlin* does not help plaintiff in this case. It deals with the issue of unrebutted testimony of a plaintiff's expert to prove a fact in dispute, not with the failure to produce such testimony at a proceeding to determine whether disputed facts exist. It does not hold that an expert opinion affidavit offered by a defendant in a summary judgment proceeding need not be controverted. The question of granting summary judgment on uncontradicted expert testimony is substantially different than granting a directed verdict in a trial upon uncontradicted expert testimony. A summary judgment results when there is no factual dispute on an issue. Uncontroverted expert testimony is sufficient to indicate that no factual issue exists. A directed verdict for a defendant results when a plaintiff fails to

meet its burden of proof on an issue of fact. A directed verdict for a plaintiff results when a plaintiff has met its burden of proof on an issue and the defendant is unable to rebut that evidence. Under *Chamberlin,* uncontroverted expert testimony is in itself insufficient to require a directed verdict for the party offering the expert testimony.

By failing to respond to defendant's expert opinion that the treatment plaintiff received was "consistent with the degree of care, skill and diligence" exercised by "ordinarily careful physicians performing the specialty of radiotherapy in the same [or] similar circumstances," plaintiff did not demonstrate the existence of a factual dispute on this issue. It must, therefore, be taken as undisputed that the treatment was consistent with the requisite standard of care.

■    The whole scheme of summary judgment is designed to cut off litigation at an early stage, without subjecting the parties to months or years of extensive and expensive litigation, where it appears that one of the parties has no case or defense. *See Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 34 (1978) (discussing the former summary judgment statute, ORS 18.105).[7] Under the summary judgment rule, ORCP 47, if a motion for summary judgment is supported by affidavits, the adverse party may not rest upon the mere allegations of that party's pleading. ORCP 47D. provides:

"Except as provided by section E. of this rule, supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. * * * When a motion for

---

[7]    "ORS 18.105 was 'enacted to facilitate effective use of the court system by allowing for a quick, early and inexpensive method of determining whether the pleadings present a triable issue of fact.' *Garrison v. Cook,* 280 Or 205, 209, 570 P2d 646 (1977). The party moving for summary judgment must establish that (1) there is no issue as to any material fact; and (2) he is entitled to judgment as a matter of law. If these requirements are met, the parties need not wait until trial but may seek a final adjudication of the action by motion. 'In this way, dilatory tactics resulting from the assertion of unfounded claims or the interposition of specious denials or sham defenses can be defeated, parties may be accorded expeditious justice, and some of the pressure on court dockets may be alleviated.' 10 Wright & Miller, Federal Practice and Procedure § 2712. * * *" *Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 34 (1978).

summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations of that party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue as to any material fact for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against such party."

ORCP 47E. applies to cases where a party is required to provide the opinion of an expert to establish a genuine issue of material fact. ORCP 47E. provides:

"* * * If a party, in opposing a motion for summary judgment, is required to provide the opinion of an expert to establish a genuine issue of material fact, an affidavit of the party's attorney stating that an unnamed qualified expert has been retained who is available and willing to testify to admissible facts or opinions creating a question of fact, will be deemed sufficient to controvert the allegations of the moving party and an adequate basis for the court to deny the motion. The affidavit shall be made in good faith based on admissible facts or opinions obtained from a qualified expert who has actually been retained by the attorney who is available and willing to testify and who has actually rendered an opinion or provided facts which, if revealed by affidavit, would be a sufficient basis for denying the motion for summary judgment."

Not only did plaintiff fail to produce a contradictory affidavit, her attorney did not state by affidavit "that an unnamed qualified expert has been retained who is available and willing to testify to admissible facts or opinions creating a question of fact," as specified by ORCP 47E.

It is evident from the allegations in plaintiff's complaint that expert testimony is required on the four specific negligence charges. *See Getchell v. Mansfield,* 260 Or 174, 179, 489 P2d 953 (1971). In *Getchell,* this court addressed the issue and stated:

"* * * Expert testimony is required to establish what the reasonable practice is in the community. The conduct of the defendant-professional is adjudged by this standard. Without such expert testimony, a plaintiff cannot prove negligence. The reason for this rule is that what is reasonable conduct of professionals is not ordinarily within the knowledge of the usual jury. * * *"

In *Getchell* we acknowledged that if the jury is capable of deciding what is reasonable conduct without assistance from an expert medical witness, no expert testimony is necessary to establish the standard of practice in the community. We mentioned, for example, that a jury could find a surgeon negligent without the assistance of expert testimony if the surgeon operated without sterilization of his instruments. But this is not such a case. The allegations of negligence against the defendants are complex and require expert testimony.

We now address the issue whether expert testimony is required on the informed consent issue. In *Getchell,* we pointed out that in most cases expert medical testimony will be necessary for the patient to establish each of the three elements of informed consent. Those three elements were spelled out in *Getchell* as (1) the risk of injury inherent in the treatment is material, (2) there are feasible alternative courses available, and (3) the patient can be advised of the risk and alternatives without detriment to the patient's well-being. 260 Or at 183.

*Getchell* was decided in 1971. In 1979, the Oregon legislature codified the essence of the *Getchell* decision in ORS 677.097 with some modification. That statute, which was amended in 1983 to include podiatrists, Or Laws 1983, ch 486, § 8, provides:

"(1) In order to obtain the informed consent of a patient, a physician or podiatrist shall explain the following:

(a) In general terms the procedure or treatment to be undertaken;

(b) That there may be alternative procedures or methods of treatment, if any; and

(c) That there are risks, if any, to the procedure or treatment.

"(2) After giving the explanation specified in subsection (1) of this section, the physician or podiatrist shall ask the patient if the patient wants a more detailed explanation. If the patient requests further explanation, the physician or podiatrist shall disclose in substantial detail the procedure, the viable alternatives and the material risks unless to do so would be materially detrimental to the patient. In determining that further explanation would be materially detrimental the physician or podiatrist shall give due consideration to the

standards of practice of reasonable medical or podiatric practitioners in the same or a similar community under the same or similar circumstances."

As we analyze this statute, paragraphs (a), (b) and (c) of subsection (1) do not require expert testimony. The duty of care was determined by the legislature. Under subsection (2), expert testimony may be necessary to establish the standard of practice of reasonable medical practitioners if the patient requests a further explanation of the procedures or treatment to be undertaken. Applying ORS 677.097 to this case, plaintiff does not allege any violation of subsection (1)(a), that the physician failed to inform her in general terms the procedure or treatment to be undertaken, or (b) that the physician failed to advise that there may be alternative procedures or methods of treatment. We, therefore, do not consider any potential violation of the physician's duty to inform under those paragraphs of the statute, even though there is a factual dispute in the affidavits as to whether Mrs. Tiedemann was advised of the alternative methods of treatment that she could have chosen to undergo, the remainder of a radical hysterectomy as opposed to being subjected to radiation.[8]

As to paragraph (c) of ORS 677.097(1), Mrs. Tiedemann admits she was informed of certain risks, but disputes the amount of information that was communicated to her by the physician regarding the risk of the procedure or treatment. Although plaintiff alleged in her complaint and stated in affidavit form that she was not informed of any risk to her small or large bowel as a result of the radiation therapy which might require surgery or removal of the affected area and which could entail a colostomy, the plaintiff did attach as an exhibit to her memorandum in opposition to the motion for summary judgment the following excerpt written by Dr. Thompson from the medical record:

"It is explained to the patient that treatment may be associated acutely with irritation of small bowel, colon and bladder

---

[8] Dr. Thompson testified in her deposition, made a part of the record, that such a procedure was available but did testify that she informed Mrs. Tiedemann of that alternative. Mrs. Tiedemann denies that Dr. Thompson explained any alternative to radiation therapy. Normally this would create a genuine issue of fact for a jury but, as mentioned, there was no allegation of negligence that the physician failed to inform the patient of alternative procedures. There is no allegation that Dr. Thompson violated the statute in failing to ask the patient if the patient wanted a more detailed explanation.

and chronically with fibrosis, scarring and even bleeding of any of these structures at worst requiring surgery. She understands this and wishes to proceed with therapy."

The plaintiff, by utilizing the medical report to support her claim, thereby adopted it. *See* OEC 801(4)(b)(B); *State v. Severson,* 298 Or 652, 656-57, 696 P2d 521 (1985).

■ Dr. Thompson testified in her deposition (part of the record) that it is her practice to discuss the fact that the surgery might require the removal of the affected area which could entail and include a colostomy. There is no allegation or evidence in the record that the patient requested any further explanation. Subsection (2) of ORS 677.097 provides that in determining whether further explanation would be materially detrimental the physician shall give due consideration to the standards of practice of reasonable medical practitioners in the same or a similar community under the same or similar circumstances. Under the facts of this case, what additional information should have been given is a matter for expert testimony. The defendant physician's affidavit addressed that issue of fact by stating that her description of the treatment and its "possible effects [risks] * * * was consistent with the degree of care, skill and diligence which is used by ordinarily careful physicians performing the specialty of radiotherapy in a same [or] similar circumstance in the state of Oregon." The plaintiff failed to rebut this opinion of fact as required by ORCP 47D. and E.

■ In the case at bar, lay testimony cannot establish a *prima facie* case for the plaintiff. The unrebutted expert testimony offered by the defendant left no genuine issue of material fact to be resolved. Defendant was entitled to summary judgment.[9]

---

[9] This court's recent decision in *Bank of Oregon v. Independent News,* 298 Or 434, 693 P2d 35 (1985), is not contrary to our decision in this case. In that case we said, "There is no merit to the contention that summary judgment was nevertheless proper because defendants presented uncontroverted evidence that defendants were not negligent." 298 Or at 446-47, citing *W. R. Chamberlin & Co. v. Northwestern Agencies,* 289 Or 201, 207, 611 P2d 652 (1980). However, in *Bank of Oregon,* the record contained facts to support plaintiff's claim of ordinary negligence, and we held expert testimony is not necessary to prove a case of ordinary journalistic negligence. Therefore, the defendants could not establish the absence of a material issue of fact by producing an uncontradicted affidavit stating that defendants' conduct met the standard of care in the newspaper business.

The Court of Appeals is reversed and the trial court judgment in favor of defendants is affirmed.