Argued and submitted January 25, reversed and remanded April 5, 1989

O'GARA,
*Appellant,*

*v.*

PTACEK,
*Respondent.*

(84-4508-J-2; CA A47787 (Control))

O'GARA,
*Appellant,*

*v.*

PTACEK,
*Respondent.*

(84-4438-J-2; CA A47786)
(Cases consolidated)

771 P2d 642

Loren L. Sawyer, Judge.

Claud Ingram, Eugene, argued the cause and filed the brief for appellants.

Ridgway K. Foley, Jr., Portland, argued the cause for respondent. With him on the brief were M. Elizabeth Duncan and Schwabe, Williamson & Wyatt, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff[1] appeals a summary judgment for defendant Ptacek on the ground that plaintiff's actions were barred by the Statute of Limitations. This is the second time that these consolidated actions have been to this court. The first time, plaintiff appealed after the trial court granted an ORCP 21 motion on the ground that the action was barred by the statute. We reversed, holding that a trial court must look to the face of a current complaint only, not to a superceded pleading, when ruling on a motion to dismiss on the ground that a complaint is time-barred. *O'Gara v. Kaufman,* 81 Or App 499, 726 P2d 403 (1983).[2] On remand, the trial court resolved a motion for summary judgment in favor of defendant on the same ground, that the amended complaint was time-barred. We again reverse.

In the original complaint, plaintiff alleged that Doctors Ptacek, Kaufman and Sacks and Rogue Medical Center was each negligent in doing one or more of eight particular acts. The amended complaint dropped the allegations against Sacks and the hospital and listed specific allegations against Kaufman and Ptacek.[3] On May 20, 1985, judgment was entered in favor of Kaufman. This appeal concerns Ptacek only.

In June, 1980, plaintiff saw Kaufman because of vaginal bleeding. He performed a hysterectomy and discovered large multicystic tumors on both ovaries. Later, in 1980 and in 1981, plaintiff underwent radiation and chemotherapy treatments at Rogue Valley Memorial Hospital under the direction

---

[1] These actions were brought by Maureen O'Gara (plaintiff) for medical malpractice and her husband, James O'Gara, for loss of consortium. Plaintiff died during an earlier stage of this case, and her malpractice action was continued by James O'Gara as personal representative of her estate.

[2] In the first appeal, in addition to the parties named here, Robert G. Kaufman, M.D., Richard D. O'Toole, M.D., Rogue Valley Medical Center, an Oregon corporation dba Rogue Valley Memorial Hospital, and Sisters of Providence in Oregon, an Oregon corporation dba Providence Hospital, Medford, Oregon, were named as defendants. The parties named in this case are those whose names appear on the notice of appeal filed after the entry of summary judgment on remand.

[3] The trial court granted a motion for summary judgment for Sacks and signed a final judgment on February 3, 1988. The court signed a final judgment of dismissal for another defendant, Walters, on February 29, 1988, based on a stipulated order of dismissal.

and supervision of Kaufman, Sacks and Ptacek. In the original complaint, plaintiff alleged that one of these named doctors told her that the tumors were inoperable and that the treatments were her only alternative. Plaintiff dropped this allegation in the amended complaint. The radiation and chemotherapy treatments were ineffective, and in August of 1981, another doctor surgically removed the tumors at Oregon Health Sciences University Hospital. During December, 1982, blood appeared in plaintiff's urine, and she was hospitalized between December 23 and December 26. During that hospitalization, she learned that vital body organs had suffered permanent long-term damage from the radiation and chemotherapy treatments. She was hospitalized again in 1983 for further treatment and surgery. She filed her complaint on December 6, 1984.

Plaintiff alleges that Ptacek was negligent in failing to advise her of the effects of radiation and chemotherapy on vital body organs and in failing to advise her of the high degree of risk to her kidneys from administering each dosage of chemotherapy. Plaintiff claims that such negligence resulted in permanent long-term damage to her vital body organs, which did not manifest itself and was unknown to her until she was hospitalized on December 23, 1982.

■ The first question is whether the documents submitted in support of the motion for summary judgment show that plaintiff discovered, or should have discovered, earlier than two years before December 6, 1984, specifically in August, 1981, that she had a cause of action against Ptacek. ORS 12.110(4). The test is whether plaintiff knew or should have known "through diligent inquiry, facts from which a reasonable factfinder could conclude that plaintiff's injury was caused by an act of defendant that was somehow negligent." *O'Gara v. Kaufman, supra,* 81 Or App at 504, *quoting Duncan v. Augter,* 62 Or App 250, 255, 661 P2d 83, *rev den* 295 Or 122 (1983). Plaintiff's first complaint alleged that one or more of three doctors advised her in 1980 that her tumors were inoperable. When she learned that the tumors were safely operable in 1981, a cause of action accrued against the doctor who gave her the 1980 advice. The amended complaint does not allege that Ptacek gave her that advice, and we cannot infer from the record on summary judgment, which includes the superceded complaint and three affidavits, that Ptacek did

give the allegedly negligent advice. In addition, we cannot infer from the record that, when plaintiff learned that the tumors were operable, she knew or had a reason to know that the radiation and chemotherapy treatments, though not effective to cure her condition, had not been beneficial. On this record, the first time plaintiff knew or had a reason to know that she had a cause of action against Ptacek was in December, 1982, when she learned of the damage to her internal organs. Her December 6, 1984, complaint was timely filed. The trial court erred in granting summary judgment based on the Statute of Limitations.

■ Ptacek also moved for summary judgment on the issue of his standard of care, asserting in his own affidavit as an expert in radiation therapy that his treatment of plaintiff was consistent with the degree of care, skill and diligence maintained and practiced by ordinarily careful physicians performing radiation therapy. In a medical malpractice action, a defendant doctor may offer his own medical expert opinion in an affidavit as evidence to support a summary judgment motion on the issue of the applicable standard of care. *Tiedemann v. Radiation Therapy Consultants,* 299 Or 238, 701 P2d 440 (1985). He must offer a foundation for his expertise, his personal knowledge of the matters at issue and a statement that, in his opinion, the treatment was consistent with the degree of skill, care and diligence exercised by ordinarily careful physicians performing his specialty in the same or similar circumstances. 299 Or at 242-43; *see also* OEC 702, 703, 705. Ptacek's affidavit was proper expert evidence on the issue of standard of care.

■ An affidavit from plaintiff's attorney stating that a qualified expert has been retained "who is available and willing to testify to admissible facts or opinions creating a question of fact" on the negligence issue would controvert Ptacek's affidavit. ORCP 47E; *Tiedemann v. Radiation Therapy Consultants, supra,* 299 Or at 246. In this case, plaintiff provided two affidavits. One from plaintiff's husband stated that Ptacek gave no advice to her about the risk to her organs or of the risk of long-term side effects. One from plaintiff's attorney stated that Ptacek had stated in deposition that he did not recall the details of his advice to plaintiff and that he normally advises patients of nausea, diarrhea, constipation and loss of hair. The attorney also stated that he had an expert witness

who would testify "that radiation therapy causes fibrosis and tissue damage which does not manifest itself until some time after the radiation is completed" and that "[plaintiff] suffered extensive fibrosis and tissue damage as a result of high dosages of radiation therapy[.]"

Ptacek's affidavit states, in pertinent part:

"3. Plaintiff's amended complaint alleges that I was negligent '(a) In failing to advise Plaintiff of the effects of radiation and chemotherapy treatments on vital body organs.' It is my opinion that the description I gave to Mrs. O'Gara and its possible effects was consistent with the degree of care, skill and diligence maintained and practiced by ordinarily careful physicians performing the specialty of radiation therapy under the same or similar circumstances in this community.

"4. The amended complaint further alleges that I was negligent '(b) In failing to advise Plaintiff of the high degree of risk of long-term damage to Plaintiff's vital body organs by radiation and chemotherapy treatments.' It is my opinion that the description of risks of long-term damage I provided to Mrs. O'Gara was consistent with the degree of care, skill and diligence maintained and practiced by ordinarily careful physicians performing the specialty of radiation therapy under the same or similar circumstances in this community."

In summary, he states in his affidavit that he described the effects of radiation and chemotherapy on vital organs and described risks of long-term damage, implying that, with those descriptions, he met the standard of care. In depositions, he testified that he could not remember what he had told plaintiff. Plaintiff's husband's affidavit represents that no advice was given about the effects of radiation on bodily organs or of its long-term side effects. The attorney's affidavit represents that he has an expert who will testify that such effects occur and that plaintiff suffered such effects. Plaintiff's affidavits controvert Ptacek on the question of whether *any* advice was given. Although the affidavits do not specifically state that advice of a risk to bodily organs or of long-term side effects is required in the exercise of reasonable professional care, it may be inferred from Ptacek's affidavit that some such advice is necessary to meet the professional standard of care. Whether such advice is required, whether it was given and whether, if given, it was adequate remain disputed issues of material fact. The trial court should not have entered summary judgment for defendant.

Reversed and remanded.